UNITED STATES, Appellee

v

DANNIS E. PRESLEY, Private First Class,
U. S. Army, Appellant

18 USCMA 474, 40 CMR 186

*Captain Paul C. Saunders* argued the cause for Appellant, Accused. With him on the brief were *Colonel Daniel T. Ghent* and *Lieutenant Colonel Charles W. Schiesser.*

*Captain Herbert D. Miller, Jr.,* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel David Rarick* and *Major Edwin P. Wasinger.*

## Opinion of the Court

QUINN, Chief Judge:

A general court-martial convened in the Republic of Vietnam convicted the accused of six offenses in violation of the Uniform Code of Military Justice. We granted review to consider whether the findings of guilty as to four of the offenses are supported by the evidence.

Two incidents in February 1968 led to the charges. The progression of events was essentially the same on each occasion. The accused's platoon was ordered to move out of its camp to engage Viet Cong units operating in the area. The platoon lieutenant ordered the accused to accompany the unit; when the accused responded in a negative way, the lieutenant called the company commander, who repeated the order. The confrontations occurred on February 20 and February 28, and resulted in two groups of three charges. The first group includes willful disobedience of the lieutenant's order to accompany the platoon on February 20; willful disobedience of the captain's order to accompany the platoon on February 20; and cowardly conduct in the presence of the enemy, by refusing to go with the platoon on its February 20 mission. The second group contains the same offenses except that the date of their commission is February 28.

At trial, the accused pleaded guilty to willful disobedience of the successive orders given to him on February 28 by the platoon lieutenant and the company commander. He pleaded not guilty to the four other offenses, but was found guilty as charged.

The accused joined his company in January. By February 20, he had gone on "[q]uite a few" missions with his platoon. The platoon lieutenant testified the accused might have gone on as many as "30 or 35 missions" and had not misbehaved in any way on any of them. Other prosecution witnesses, who were members of the platoon, testified that on previous missions the accused had never exhibited the least indication of cowardice. In his own testimony, the accused categorically denied he was ever afraid to go on any mission.

On February 19, the Viet Cong had attacked a nearby village and the company was "sent down to try and straighten it out." During the day, it had moved from "one position to another" and, finally, returned to camp between 11:00 p.m. and midnight. The accused had had only a few hours sleep; he had a headache and felt ill. As one prosecution witness testified, he was "complaining . . . about being sick." About 5:00 a.m., on February 20, the platoon was awakened. The accused went to the platoon medical corpsman, Specialist Four Nicholas W. Miller, and told him he had nausea and a headache. Miller gave him some pills. Later, the platoon was ordered to move out for the day's mission. The accused talked to the platoon sergeant and told him he was sick and could not go.

According to the sergeant, who testified as a prosecution witness, the accused exhibited "all the symptoms of being sick." He referred the accused to the platoon lieutenant. The accused also "appeared . . . [to be] very sick" to the lieutenant; nevertheless, when the senior aid man "looked . . . over" the accused and told him the accused was "faking," he concluded the accused was "scared." He thereupon ordered the accused to mount a truck to go on the mission. The accused told him he could not go because he was ill, and he requested permission to see a doctor. The lieutenant called the company commander. Within a minute or two, the captain approached the accused and give him the same order the lieutenant had given him.

All the witnesses, prosecution and defense, agree as to what transpired after the accused received the order from the captain. The captain's testimony is typical. He testified the accused responded to his order by saying that he could not go; that he was ill and had trouble with his stomach. The captain answered the accused's remarks as follows: "I'm not going to force you to go" on the mission; "I'm ordering you to go to see the Battalion Surgeon." And he sent the accused "back to the rear." Accompanied by a senior medic, the accused went to the battalion surgeon, who examined him. In the surgeon's opinion, the accused did not appear to be "acutely ill," but might possibly have had "physiologic stomach pain from the extreme apprehension." He had the "impression" the accused was "scared," but he could not attribute it to apprehension of "peril." He directed the accused to return to his company area.

Putting aside the question of whether the accused was feigning illness, the record compellingly indicates that his response to both the captain and the lieutenant was not an expression of defiance of their authority, but an effort to obtain reconsideration and relief from their respective orders. The record equally indicates that he succeeded. The captain directly rescinded his own order by "ordering" the accused to go to the battalion surgeon. United States v Ewing, 13 CMR 715. Since the captain had been informed of the accused's response to the lieutenant's order and his own initial order duplicated the lieutenant's, there can be no doubt that his order to report to the surgeon was also intended to supersede and countermand the lieutenant's order. Cf. United States v Stout, 1 USCMA 639, 5 CMR 67. The findings of guilty of willful disobedience of the February 20 orders are, therefore, not supported by the evidence.

We turn now to the two charges of cowardice. While the acts are separate in time, the circumstances surrounding the one are relevant to the other.

The Government's lead witness testified that, in early February, the accused had told him about some personal problems. These included his effort to reconcile parental teaching as to the Biblical Commandment not to kill with his participation in the Vietnam war and his desire to return to the States to marry his girl friend. In the course of these conversations, the accused indicated he "planned to get in some kind of trouble" so that he would be sent to jail and, from there, to his home. The witness advised the accused to consult the company commander, but the accused was apprehensive about what the "chain of command" would think of him for asking "for such a favor" while in a combat situation.

Testifying in his own defense, the accused admitted he told the witness about "part" of his problems; he believed he "just couldn't" discuss these problems with his officers. As we noted earlier, he denied that his conduct on February 20 and February 28 was motivated by cowardice. He maintained that on February 20 he was sick. So far as the events of the 28th were concerned, by his plea of

**477**

guilty, he admitted he willfully disobeyed the orders to go on the mission. He testified that on that occasion his personal problems were on his mind and he "just couldn't think straight" so he "told them . . . [he] didn't want to go" on the mission. According to the lieutenant, the accused gave no sign of being "jittery" and, unlike his appearance on February 20, when he appeared to be "very sick," he "stood up straight" and seemed to have "made up his mind that he wasn't going to go." He asked the accused why he would not go on the mission, and the accused replied, " 'My reasons are personal.' " The captain elicited the same response when he came on the scene and ordered the accused to go on the mission. The captain testified the accused was "perfectly calm" and had "complete control of himself." He asked the accused if he was ill, and the accused answered that he was not. The platoon sergeant testified he saw "[n]othing . . . out of the way" except that the accused had the "attitude" that "he didn't want to go"; in his opinion, the accused was not afraid to go. However, one witness testified he observed the accused when he refused to obey the captain's order on February 28; the accused "looked like he was a beat man" and he "had a glassy look in his eyes like he appeared to be scared."

Contradictory strands of evidence appear in the Government's case. On the one hand, there is the implication presented by the Government's lead witness that the accused's refusal to participate in the mission was motivated by his desire to "mess up," so that he might return home to marry his girl friend and conform to parental teaching as to the Sixth Commandment. On the other hand, the Government argues that the accused's "scared" state on both occasions supports the inference that he was a coward and feared going out on the missions. Our responsibility is to review all the evidence, without reweighing particular items of evidence and without substituting our judgment as to the credibility of the witnesses in place of that of the court members. United States v Wilson, 13 USCMA 670, 33 CMR 202. We must determine whether, viewing the record in the light most favorable to the Government, there is " 'substantial evidence . . . to support' " the findings of guilty by the court-martial. United States v Parham, 14 USCMA 161, 164, 33 CMR 373. If we conclude there is not enough evidence, those findings of guilty must be set aside. United States v Yarborough, 1 USCMA 678, 5 CMR 106.

Cowardice is misbehavior motivated by fear. Manual for Courts-Martial, United States, 1951, paragraph 178e; United States v Yarborough, supra. In a prosecution for cowardly conduct, it is not enough to show the accused was in the presence of the enemy and that he refused to go forward to face the enemy. Refusal to proceed against the enemy because of illness is not cowardice. United States v Horst, 1 USCMA 452, 4 CMR 44.

An abundance of testimony supports a conclusion that, on February 20, the accused did not feign illness because of fear of combat. He had unhesitatingly accompanied the platoon on many missions, including that of the previous day, and he had never exhibited any sign of cowardice. He complained of illness before he had notice of the mission, and he sought medical help before the platoon was alerted for the mission. To a number of persons, including the platoon lieutenant, he appeared to be "very sick," and exhibited symptoms of illness unassociated with fear of contact with the Viet Cong. One enlisted medical corpsman, who saw the accused on February 20 before he encountered the platoon lieutenant, "figured that he was suffering . . . regular stomach cramps." A second corpsman testified that, on the basis of his visual observation of the accused, he did not "think" the accused "was sick," but that "it could be psychosomatic." Both corpsmen "agreed" the accused should be sent to the dispensary. True, the platoon lieutenant testified

478

that a medical corpsman told him that the accused had "prebattle jitters" and "was faking."[1] However, the battalion surgeon testified that, while he did not find the accused "acutely ill," it was possible he had "physiologic stomach pain from the extreme apprehension." He thought the accused was "nervous" and "scared," but he would not say these conditions were the result of the accused's apprehension of "peril." The next day, the accused returned to the battalion surgeon to report he had had a black stool, which tends to indicate the presence of blood in the gastrointestinal tract. A rectal was performed and a small amount of stool obtained. A test of the stool produced "negative" results, indicating no medical treatment was necessary.

In our opinion, the totality of the evidence does not support a finding beyond reasonable doubt ▬▬▬▬ ▮ that the accused feigned illness on February 20 because he was motivated by fear. The testimony as to the results of the stool test does not exclude the reasonable probability that the accused had had a black stool on the previous day. It does not, therefore, support an inference that the accused lied about his stool to fortify a false claim of illness. Cf. United States v Williams, 17 USCMA 358, 38 CMR 156.

Left for consideration is whether, conceding the accused's illness on February 20, his condition ▬▬▬▬ ▮ was the result of cowardice. Genuine and extreme illness has been recognized as a defense to a charge of cowardly conduct. Winthrop's Military Law and Precedents, 2d ed, 1920 Reprint, at page 624. At the time of formulation of the defense, insights into the causation of illness were not as far advanced as they now are through developments in modern psychiatry.

Passing over difficult questions of proof and exploration of the full limits of the defense, we assume, ▬▬▬▬ ▮ for the purpose of this case, that illness generated by cowardice would not absolve one from responsibility for cowardice in face of the enemy. Is there, then, sufficient evidence to support a finding that the accused's illness was the product of cowardice? There is an intimation of that in the hearsay testimony as to the medical corpsman's conclusions, but the battalion surgeon who, at least inferentially, examined and observed the accused more thoroughly than the corpsman, refused to go that far in his evaluation of the accused's illness. Considering all the evidence on the subject, it is, in our opinion, too equivocal to support a conclusion that the accused acted as he did because he was afraid of combat. United States v Yarborough, supra. Thus, even apart from the effect of the captain's order to the accused to go to the dispensary, which the accused maintains should be considered, the charge of cowardice on February 20 is not supported by the proof.

Turning to the February 28 incident, the overwhelming weight of evidence indicates the accused was determined and resolute in bearing and conduct. These circumstances argue very heavily against the idea that he was motivated by cowardice. True, one witness testified that at the time the accused refused to obey the captain's order he "appeared to be scared." That appearance is at least as consistent with apprehension of the consequences of his defiance of authority as it is indicative of fear of combat. In any event, the testimony of the witness is too meager and too inconclusive to support a finding that the accused was motivated by fear in refusing to go on that mission.

The decision of the board of review is reversed as to Charge I, specifica-

---

[1] For present purposes, we put aside consideration of the admissibility of this testimony. See United States v Kellum, 1 USCMA 482, 4 CMR 74; United States v Carrier, 7 USCMA 633, 23 CMR 97.

tions 1 and 2, and Charge II and its specifications, and the findings of guilty as to those charges are set aside and the charges are ordered dismissed. The record of trial is returned to the Judge Advocate General of the Army for submission to the board of review for reassessment of the sentence on the basis of Charge I, specifications 3 and 4, to which the accused pleaded guilty.

Judges FERGUSON and DARDEN concur.