UNITED STATES, Appellee

v.

WILLIAM ELBERT KELLUM, JR. Corporal,
U.S. Marine Corps, Appellant

1 USCMA 482, 4 CMR 74

No. 408

Decided July 25, 1952

LCDR. Robert H. McCarthy, USNR, for Appellant.
CAPT. Wesley C. Blake, USMC, for Appellee.

GEORGE W. LATIMER, Judge:

Accused was tried by summary court-martial for the offense of knowingly, willfully and without proper authorization having in his possession five syrettes of morphine tartrate. The trial was held prior to the effective date of the new Code, and accused was found guilty and sentenced to forfeit $50.00 per month for six months; to perform extra police duties for three months, and to be discharged from the United States Naval Service with a bad-conduct discharge. The convening authority approved the findings, but remitted that part of the sentence requiring the performance of extra police duties. The board of review in the office of The Judge Advocate General of the Navy affirmed. This Court granted accused's petition for review, but limited the scope of the review to three issues. However, in view of our holding on one, discussion of the other two will serve no useful purpose as the contentions are peculiar to this case and similar problems would seldom arise. Accordingly, the issue with which we concern ourselves is: Was the admission in evidence of third-party statements error which substantially prejudiced the accused?

On April 15, 1951, shortly after 10 o'clock p. m., Pvt. Richard C. Moses was apprehended when he entered the gate of Annex "B," Thirty-Fifth Station Hospital, Kyoto, Japan. As the gate sentry was about to search him Moses attempted to throw a handkerchief containing three bundles of syrettes into a drainage ditch. The sentry summoned a sergeant of the Military Police, who proceeded to question Moses as to his possession of the morphine. Moses was held and on the following day, April 16th, an agent of the Criminal Investigation Division interrogated him. The accused was not present at either interview.

At the trial the Government called the sergeant and the agent as witnesses for the prosecution. The sergeant identified the box of syrettes, which was admitted in evidence, as that taken from Moses when he was apprehended on the night of April 15th. In addition to testifying to the circumstances surrounding the apprehension of Moses, he further testified that Moses had told him that he (Moses) had obtained the syrettes from a U. S. Marine on April 14th at the Tago Restaurant in Kyoto; and that the marine, whom he did not identify, told Moses he would bring ten more boxes on the next day.

The agent testified as to his interrogation of Moses the day after the latter's apprehension. He testified that during this interview Moses implicated the accused by making the following statement: That Moses had met the accused on April 14th; that accused was in possession of the narcotics and had asked Moses where they could sell some morphine; that the two of them had attempted to sell the syrettes on that evening, but had not succeeded; that Moses and accused had gone to a house of prostitution; that while there the accused had given the syrettes to Moses; and that accused had agreed to meet him later when more morphine would be delivered to Moses.

The convening authority in approving the finding of the court-martial stated that the above related testimony of the sergeant and the agent was hearsay, and was detrimental to the accused; but, because there was sufficient evidence aside from that which should have been excluded, he approved the finding. The board of review in its decision noted that inadmissible hearsay appeared in the record, but concluded that it did not materially prejudice the substantial rights of the accused. Government appellate counsel in the brief and argument before this Court likewise conceded that the questioned testimony was hearsay and that its admission was error as a matter of law. They contend, however, that it was not prejudicial.

Before discussing the question of the prejudicial effect of the testimony it is necessary first to determine whether it was hearsay, and as such, inadmissible; or, whether it fell without the hearsay

rule because it was a prior consistent statement of a witness admissible for the purpose of fortifying or rehabilitating his credibility. If the questioned evidence qualifies under the latter rule then it is admissible, otherwise not.

Generally, statements. which go to establish the proof of the crime alleged, made by a witness to other █ persons, out of the presence of the accused, are within the proscriptions of the hearsay rule, and evidence of what the witness said on other occasions is not competent to fortify his testimony. The rule is stated in Wharton's Criminal Evidence, Section 445, page 700, as follows:

"A witness cannot corroborate his testimony by proof of having made similar statements to others, except in rebuttal of an inference that the testimony was manufactured at a late date, or was the result of an unfriendly act; nor can a witness bolster up or corroborate his testimony by statements made by another person to a third person. It is no confirmation of what the witness had said on oath, to show that he has made similar declarations when under no such solemn obligation to speak the truth. . . ."

The rule has been generally adopted. In the case of Sweazey v. Valley Transport, Inc. 6 Wash2d 324, 107 P2d 567, the Supreme Court of Washington stated as follows:

"The general rule announced in practically all states, including our own, is that the testimony of a witness cannot be bolstered up or supported by showing that the witness had made statements out of court similar to and in harmony with his testimony on the witness stand. Conrad v. Griffey, 11 How. 480, 13 L. Ed. 779; Craig v. Craig, 5 Rawle, Pa., 91; Judd v. Letts, 158 Cal. 359, 111 P. 12, 41 L. R. A., N. S., 156; Loomis v. New York, etc., Co., 159 Mass. 39, 34 N. E. 82; Russell v. Cavelero, 139 Wash. 177, 246 P 25."

There are, however, instances where

exceptions to the general rule are recognized. Some of these are:
 █ (1) Where the testimony of the witness is assailed as a recent fabrication; (2) where the witness has been impeached by prior inconsistent statements; and (3) where the witness' testimony is discredited by an imputation of bias, prejudice, or motive to testify falsely arising after the date of the prior statement. The authorities generally hold that when the posture of the evidence is such that a witness has been discredited by one of the previous methods, then prior consistent statements may for certain purposes be admitted. However, in no instance is the statement admissible as substantive or independent supporting evidence. The sole purpose for permitting it in evidence is to refute the impeachment of the witness. When limited to this purpose it does not seek to prove the truthfulness of the contents and therefore does not violate the hearsay rule.

The difficulty we encounter in this instance is that no reason is apparent which would bring the statement under any of the outlined exceptions. Moses' testimony on the stand was not attacked to such an extent as to allow his prior extrajudicial consistent statements to be admitted for any purpose. Although he was subjected to meager cross-examination concerning the evidence given on direct examination, no attempt was made to show that his testimony under oath was a recent fabrication; no prior inconsistent statements were disclosed; and, there was no showing of prejudice or bias on his part which originated between the time he gave the extrajudicial statements and the time he gave his testimony at the trial. Any circumstances which might be construed as indicating falsity, inconsistency, or prejudice on his part were as apparent at the time he made the prior statement as they were at the time of the trial.

As previously stated, Moses was cross-examined as to the █ truthfulness of his testimony concerning accused's possession, and accused and other wit-

nesses for the defense denied the story told by him. However, this is not enough to justify the admission of the questioned testimony. Although in some cases it has been held that the assailing of a witness' testimony on cross-examination, plus contrary evidence, makes the admission of prior consistent statements proper in rebuttal, the better rule seems to be otherwise. Mr. Wigmore, in his treatise on Evidence, 3rd Ed, Vol IV, Sec 1131, page 215, stated as follows:

"The broad rule obtains in a few Courts that consistent statements may be admitted after impeachment of any sort,—in particular after any impeachment by cross-examination. But there is no reason for such a loose rule."

The Supreme Court of Kansas, in the case of State v. Fouts, 169 Kan 686, 221 P2d 841, 849, stated as follows:

"Merely assailing a witness's testimony by cross-examination does not afford an opportunity to corroborate him by proof of previous consistent statements. See 3 Wharton's on Criminal Evidence, 2308, § 1410. 70 C. J., Witnesses, § 982, states that a rigid cross-examination does not justify corroborative evidence bearing on the credibility of the witness. The effect of 58 Am. Jur., Witnesses, § 819, heretofore quoted, is that the mere laying of the foundation for impeachment, without following it up and actually impeaching the witness, does not warrant corroboration of the witness by hearsay testimony, . . . Mr. Wigmore (See 4 Wigmore on Evidence, 3d Ed., § 1131) states the broad rule in a few courts is that consistent statements may be admitted after impeachment of any sort— in particular after any impeachment by cross-examination. However, he carefully points out that there is no sound reason for such a loose rule. . . ."

For the reasons outlined above we conclude the testimony was inadmissible and turn now to determine whether its admission was prejudicial to the substantial rights of the accused.

486

It is the contention of the Government that the testimony of the Japanese national and Moses was sufficient to support the finding of guilty, that the hearsay was merely cumulative, and therefore its admission did not prejudice accused. That statement of the principle bags the question of substantial influence. We believe that the rule is better stated by the United States Supreme Court in the following quotation from Kotteakos v. United States, 328 US 750, 90 L ed 1557, 66 S Ct 1239:

". . . The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand."

Omitting the testimony of the two witnesses previously referred to, the only evidence linking accused in the chain of possession of the syrettes is the testimony given by Moses and by a Japanese national. Moses testified that when he was apprehended on April 15th he had in his possession five morphine syrettes; that he had received them from the accused at about seven o'clock, on the evening of April 14th; that he had not seen the syrettes prior to that time; that he and accused were in a geisha house in Kyoto and they discussed the selling of narcotics with a Japanese national; that the accused removed the box of syrettes from his sock and handed it to Moses; and that the Japanese national, a girl from the geisha house, had witnessed the transfer of the box from accused to Moses.

The Japanese national, Kazuko Fujii, testified that she had first met the accused at approximately 8 o'clock, on the night of April 14th; that it was the only time she had seen him; that he had come to the house with three other persons, one of whom was Moses: that she, accused and Moses were in a room when she saw that accused had a box wrapped in a handkerchief; that the box was similar to the one admitted in evidence; that the witness asked

them what was in the box and Moses told her it was opium and asked if she wanted to buy it; that she refused to make the purchase and he requested that she try to sell it to someone else, which she also refused to do.

The accused testified in his own defense and denied guilt. His version of the events which occurred on April 14th was corroborated by Cpl. Miller, who accompanied him when he left camp on that date and who was with accused and Moses during a large portion of the time involved. Thus, in resolving the question of the guilt or innocence of accused, the principal determination to be made by the members of the court was the decision as to which witness was telling the truth. The underlying issue was the credibility of the accused as compared with that of Moses. Both were in part corroborated. The inadmissible evidence was repetitious and corroborative of the testimony given by Moses on the witness stand. For all practical purposes witnesses were permitted to pyramid into great importance the version offered by him. Moreover, the prior statements would have a tendency to impress the court-martial with the probability that Moses was offering the true version. It would not be unreasonable for a member of the court to conclude that the story told by Moses when first apprehended, if consistently followed, rung true. Yet, to allow a witness to accuse another and to bolster his accusation by showing that he had previously told the same story to other witnesses would permit confirmation of condemning testimony by unsworn statements. It should require little argument to establish that such procedure would materially prejudice the substantial rights of any accused. Moreover, from a practical standpoint, the procedure used permitted the Government to use a witness of questionable character and veracity and perhaps build him up to respectability in the eyes of the court-martial by blending his statements in with the testimony of reliable witnesses. We cannot affirm a finding of guilty with such infirmities and errors in the record.

The decision of the board of review is reversed, and the cause is remanded to The Judge Advocate General of the Navy for action not inconsistent with this opinion.

Chief Judge QUINN and Judge BROSMAN concur.