UNITED STATES, Appellee

v

CHARLES E. PENNINGTON, Corporal, U. S. Marine Corps, Appellant

21 USCMA 461, 45 CMR 235

No. 24,920

June 23, 1972

 

*Lieutenant Richard N. Little, Jr.*, JAGC, USNR, argued the cause for Appellant, Accused.

*Lieutenant Marion E. James*, JAGC, USNR, argued the cause for Appellee, United States. With him on the brief was *Commander Michael F. Fasanaro, Jr.*, JAGC, USN.

## Opinion of the Court

DUNCAN, Judge:

The appellant was convicted of a number of offenses including one specification each of kidnapping and assault. The Court of Military Review reversed the kidnapping conviction because of an instructional error. We granted review to consider whether the military judge's instruction was similarly erroneous with regard to the assault offense (Additional Charge III).

On June 19, 1970, Corporal Pennington learned from a friend that confinement orders had been prepared for him and that he was scheduled to be confined for certain offenses not here under review. Rather than being confined, he decided to flee.

The victim of the alleged kidnapping and assault, Lance Corporal Buell, testified that on the day in question he was approached by Corporal Abbott and asked to drive the appellant to a nearby gas station. Buell was to drive Abbott's car and to receive a couple of dollars for his efforts. Buell agreed and he and the appellant left the base. En route, the appellant picked up a tape player from the back seat of the car and placed it on the front seat between his legs. Upon arrival at the gas station, the appellant, according to Buell, raised the tape player to his shoulder and advised Buell not to turn into the station. Buell stated in his testimony, "I asked him why and the accused said that if I did he would kill me." Buell was additionally warned that if he attempted to get the attention of the highway patrol or stop the car and get out, the appellant would strike him with the tape player and take control of the car. Shortly thereafter when the appellant announced that the destination was Riverside, Buell agreed to take him there because he "was scared" and did not want to get hurt. During the ride the appellant said he was sick and rested his head on the dashboard. On arrival at Riverside, the appellant got out of the car and apologized to Buell for his actions.

462

In testifying in his own behalf, the appellant, while generally agreeing with the details of the episode as recounted by Buell, steadfastly maintained that Buell voluntarily undertook the trip to Riverside at the appellant's request. He denied that force was employed. He acknowledged that at one point he indicated to Buell he could "hit" him if he wanted to but that at the speed they were going it could wreck the car. According to the appellant, Buell laughed and said, " 'You don't have to do anything like that, man, I'll take you anywhere you want to go, man.' " He apologized to Buell for raising the tape player and Buell expressed sympathy with his predicament. At times the appellant dozed during the trip. Upon arrival in Riverside, the appellant alighted and offered to pay Buell. The latter declined and said, "You'll need everything you got.' " The appellant stated that he never intended to hit Buell with the tape player.

When instructions were being considered by the military judge, during an out-of-court hearing, defense counsel, in order to focus on the defense theory of *consent,* as regards the charge of kidnapping, requested the following instruction:

"You are advised that in order to find the accused guilty of the allegation of the specification of Additional Charge IV, you must be satisfied by legal and competent evidence beyond a reasonable doubt:

"That the accused was in actual control or command of the vehicle, and that the acts of Lance Corporal BUELL were not of his own volition but done at Corporal Pennington's direction."

The judge agreed to give that instruction except for the words "[t]hat the accused was in actual control or command of the vehicle, and." When instructing the court, however, the military judge omitted not only that clause but the entire first paragraph as well. The entire instruction with regard to the defense theory of *consent* was:

"You are further instructed:
"That, in order for consent to be a complete defense to a charge of kidnapping, it must appear that the victim voluntarily and of his own free will, gave his consent, either expressedly [sic] or impliedly, and that in order to form the basis of a defense, it must be shown that the consent in question was not the product of force, fear, or coercion.

*"You are further advised:*

*"That, the acts of Lance Corporal BUELL were not of his own volition but done at Corporal PENNINGTON's direction."*[1] [Emphasis supplied.]

In finding this instruction to be prejudicial to the substantial rights of the appellant, the Court of Military Review stated:

"The Instruction as thus delivered to the court members effectively removed from their consideration the defense theory that Buell freely and voluntarily drove the appellant to Riverside since they were instructed that this act of driving on the part of Buell was 'not of his own volition' but rather was 'done at Corporal Pennington's direction.' It is now virtually Hornbook Law that a military judge is required to instruct the court members not only on the elements of the offense but, in addition, on all defenses reasonably raised by the evidence. Cf. United States v Smith, 13 USCMA 471, 33 CMR 3 (1963). When a military judge as here instructs on the defense of 'consent' but then turns

[1] The staff judge advocate, after expressing concern over this instruction, remarked in his post-trial review at page 22:
". . . That such portion of the requested Defense instruction was omitted is clear, as I have had the court reporter carefully double-check his tapes, and the Record, as it appears on page 178, must be considered to be correct."

around and in effect advises the court members that such a defense is not applicable to this case because the victim's actions were 'not of his own volition,' the error is patent. The findings of guilty of this charge and specification must be disapproved. While a rehearing is possible, such action is not deemed appropriate under the circumstances of this case. Accordingly, the findings of guilty of Additional Charge IV and its specification cannot be approved. The sentence will be reassessed accordingly."

Appellate defense counsel contend that the above-noted erroneous statement, being inconsistent with the instructions on the offense of assault, was equally prejudicial.

In order to find the appellant guilty of assault, the court was initially told that it must find, beyond a reasonable doubt, that "the accused offered to do bodily harm to Lance Corporal BUELL; [t]hat he did so by raising up to strike at him . . . [with] a stereo tape player; [t]hat, the offer was done with unlawful force and violence; and . . . in a manner likely to produce grievous bodily harm." The court was further instructed, *inter alia*, that:

". . . An 'offer to do bodily harm' is an intentional act which foreseeably puts another in reasonable apprehension that force will immediately be applied to his person. . . . The mere use of threatening words does not constitute an assault. . . . [T]he victim must reasonably apprehend immediate bodily harm . . . [and] [t]hat, if a reasonable man, under the same conditions, would not have been put in fear, then it is not an assault."

We find no fault with these instructions standing alone. We believe, however, that the subsequent advice to the court by the military judge that "the acts of Lance Corporal BUELL were not of his own volition but done at Corporal PENNINGTON'S direction," could logically be construed as

a statement that Corporal Buell did "reasonably apprehend immediate bodily harm." The judge's statement given during the period when he was expounding the law to be followed serves to preclude the court members from applying the rule of law that an assault did not occur "if a reasonable man, under the same conditions, would not have been put in fear."

While it is true that the erroneous advice was given with regard to the offense of kidnapping and not specifically directed to the allegation of assault, the two offenses are so inextricably intertwined as to be almost inseparable. The proof of the involuntary nature of the ride to Riverside, the essence of the kidnapping, was based on the testimony of Corporal Buell that he did not consent to go but acted out of fear, a state of mind generated by the alleged assault by the appellant. The latter denied that he intended to assault Buell and contended that Buell agreed voluntarily to drive him to Riverside. Clearly, the force utilized in the kidnapping is the subject force of the alleged assault. The phrase, "done at Corporal PENNINGTON's direction," enunciated decisively the application of force.

In United States v Buchana, 19 USCMA 394, 396, 397, 41 CMR 394 (1970), we unanimously stated:

"This Court's decisions require a law officer (now the military judge) to submit the theories of both parties to the court-martial and to provide 'lucid guideposts' to enable the court members to apply the law to the facts. United States v Bairos, 18 USCMA 15, 39 CMR 15 (1968); United States v Sheeks, 16 USCMA 430, 37 CMR 50 (1966); United States v Smith, 13 USCMA 471, 33 CMR 3 (1963). In reviewing the propriety of the instructions given, appellate tribunals should review them in their entirety rather than piecemeal. United States v Houghton, 13 USCMA 3, 32 CMR 3 (1962); United States v Miller, 8 USCMA 33, 23 CMR 257 (1957)."

464

Where the military judge's instructions to the court members set forth two inconsistent standards ██ —one correct and the other incorrect—its propriety cannot be measured as a whole. Courts simply have no way of determining which principle—that which is correct or that which is erroneous—the court members elected to follow. United States v Noe, 7 USCMA 408, 22 CMR 198 (1956); United States v Skonberg, 10 USCMA 57, 27 CMR 131 (1958); United States v Sanders, 14 USCMA 524, 34 CMR 304 (1964); United States v Burse, 16 USCMA 62, 36 CMR 218 (1966). "Doubtful instructions must be resolved in favor of the ac-

cused." United States v Tackett, 19 USCMA 85, 87, 41 CMR 85 (1969). See also separate opinion of Chief Judge Quinn in United States v McIntosh, 12 USCMA 474, 477, 31 CMR 60 (1961).

That portion of the decision of the Court of Military Review affirming the appellant's conviction of Additional Charge III is reversed. The record of trial is returned to the Judge Advocate General of the Navy. The Court of Military Review may reassess the sentence on the basis of the remaining findings of guilty or a rehearing may be ordered.

Chief Judge DARDEN and Judge QUINN concur.