**UNITED STATES**

v.

**Airman Mark A. ROBERTSON, FR 500–58–5054 351st Security Police Squadron Eighth Air Force (SAC).**

**ACM 21797.**

U. S. Air Force Court of Military Review.

3 Nov. 1975.

---

* Air Force Manual 111–2, Court-Martial Instructions Guide, paragraph 2–5, 15 October 1971.

Appearances: Appellate counsel for the Accused: Mr. Donald W. Brewer, McLean, Virginia. Colonel William E. Cordingly and Major Byron D. Baur. Appellate counsel for the United States: Colonel C. F. Bennett and Captain Alvin E. Schlechter.

## DECISION

ROBERTS, Senior Judge:

Despite his pleas of not guilty, the accused stands convicted of housebreaking, larceny, assault consummated by a battery, and attempted housebreaking, in violation of Articles 130, 121, 128, and 80, Uniform Code of Military Justice, 10 U.S.C. §§ 930, 921, 928, 880. The approved sentence is a dishonorable discharge, confinement at hard labor for three years, forfeiture of all pay and allowances, and reduction to airman basic.

In his request for appellate representation, the accused has asserted several assignments of error. Others have been assigned ably briefed and argued by appellate defense counsel, both military and civilian. There has also been made a motion for a new trial, which has been briefed by both trial defense counsel and appellate defense counsel. Many of the assertions of error are substantially supported by the record, and but few are devoid of merit. However, in view of our resolution of one of the assigned errors and our disposition of the case we need not discuss the others. We agree with the contention of both trial and appellate defense counsel that the substantial rights of the accused were materially prejudiced by the erroneous admission of a written statement made by the principal prosecution witness that was assertedly consistent with his trial testimony.

The facts of the case are relatively simple. On the morning of Monday, 6 May 1974, it was discovered that the commissary warehouse at Whiteman Air Force Base, Missouri, had been burglarized during the previous weekend. Among the items stolen were six cases of cigarettes, four of Marlboro brand and two of Kent brand. The circumstances of the burglary led the agents of the Office of Special Investiga-tions (OSI) to believe that it had been committed by on-duty security policemen, and several policemen who had worked during the weekend were interviewed.. Among these was an Airman First Class John G. Rose. Although interviewed on more than one occasion, Rose denied any knowledge whatever of the break-in.

On 12 September 1974, some four months after the break-in, Airman Rose complained that he had been severely beaten by the accused and another security policeman who suspected him of informing the OSI about their role in the burglarization of the commissary warehouse. Although he had previously denied any knowledge of the offense, Airman Rose at that time prepared a two-page, detailed, written statement, in which he admitted that he had been involved in the break-in and asserted that it had been instigated and planned by the accused. He went into elaborate detail in the statement describing specifically how the break-in had been planned, organized, and directed by the accused. He further described specifically how the break-in had been accomplished and he asserted that the accused actively participated throughout the entire episode. Among the facts related in the statement by Rose, was an assertion that, "We took: five cases of Marlboro cigarettes and two cases of Kent cigarettes."

Rose's testimony at trial was virtually identical in detail to the account he had given in his statement of 12 September 1974 to the OSI. On cross-examination, trial defense counsel made a very extensive attack on his general credibility. Rose was forced to admit his many previous denials of knowledge of the offenses involving the commissary warehouse as well as his original denial that he knew who had assaulted him. His trustworthiness was placed in further doubt by his admission that he had been hospitalized not because of injuries received in the assault but because of a profound state of depression. He also admitted frequent use of drugs and of signing false certifications that he had never used

drugs. He acknowledged that he had been receiving psychiatric care in an out-patient status for some time. And, he related that over a period of time he had fantasized that he had been married to a girl from his hometown and subsequently divorced. He had told many people, including his supervisors of his marriage and divorce, and he admitted to trial defense counsel that at times he really came to believe himself that he had been married when in fact he had not.

With a general foundation being thus laid concerning the veracity of Rose, trial defense counsel cross-examined him closely with respect to the details of the burglary of the warehouse. He called Rose's attention to the fact that he had informed the OSI that seven cases of cigarettes had been stolen (despite a positive inventory showing that only six had been stolen) and then proved that on an occasion between the making of the statement and the trial, Rose told defense counsel nine cases had been stolen.

With the credibility of his key witness thus in jeopardy, trial counsel offered Rose's statement of 12 September into evidence as a prior consistent statement noting, at the time, that the only relevant portion in the statement was Rose's reference to only seven cases of cigarettes being stolen. Even though the statement had been offered for this limited purpose, the military judge admitted the statement in its entirety and furnished it to the court members for their consideration in determining the overall credibility of Rose's testimony.

■ As noted by the Court of Military Appeals in the early case of *United States v. Kellum*, 1 U.S.C.M.A. 482, 4 C.M.R. 74 (1952):

Generally, statements which go to establish the proof of the crime alleged, made by a witness to other persons, out of the presence of the accused, are within the proscriptions of the hearsay rule, and evidence of what the witness said on other occasions is not competent to fortify his testimony.

4 C.M.R. at page 77.

The same rule is expressed in the Manual for Courts-Martial, United States, 1969 (Rev.), paragraph 153a, thusly:

In general, a person gains no corroboration merely because he repeats a statement a number of times. Consequently, a witness ordinarily may not be corroborated by showing that he made statements consistent with his testimony.

■ Under these standards, Rose's statement was clearly inadmissible and should not have been considered by the Court, unless it was established that the prior consistent statement came within one of the recognized exceptions to this rule. There are three recognized exceptions to the prohibition against the use of prior consistent hearsay statements by a witness. Such statements may be used: (1) where the testimony of the witness is assailed as a recent fabrication; (2) where the witness has been impeached by prior inconsistent statements; and (3) where the witness' testimony is discredited by an imputation of prejudice or motive to testify falsely arising after the date of the prior statement. *United States v. Kellum*, supra; Manual for Courts-Martial 1969, supra, paragraph 153a.

■ We find that Rose's entire statement of 12 September 1974 comes within none of these recognized exceptions, and accordingly its admission into evidence was error. From the evidence in the record, the only imputation of any motive to testify falsely because of bias against the accused was the witness' allegation that he had been severely beaten by the accused. The alleged assault obviously occurred before the statement was made, whereas the third exception to the rule makes clear that the consistent statement, to be admissible, must have been made prior to the occasion giving rise to an inference of motive for false testimony. With respect to the first exception to the rule, that is, the use of consistent statements where testimony has been attacked as a recent fabrication, we observe that the thrust of the defense counsel's

cross-examination was that the statement itself, as well as Rose's testimony, was fabricated; Rose was attacked as being generally unreliable largely because of personality traits and characteristics he demonstrated completely apart from his testimony or his earlier statement. Thus, the recent fabrication rule cannot be used as a basis for the bolstering of his testimony by his prior statement.

 The one exception which does seem to have some relevance is that permitting the use of a prior consistent statement when the defense has shown a subsequent statement inconsistent with the testimony in Court. However, as recognized by trial counsel and evident from the above recitation, the only inconsistent statement in the accused's trial testimony dwelt upon by defense counsel related to the number of cases of cigarettes stolen. It is apparent to us that defense counsel's exploitation of this discrepancy was but a part of his general attack on the worthiness of belief of Rose rather than an attempt to disprove that seven rather than nine cases of cigarettes had been stolen. That the number of cases of cigarettes was six rather than either seven or nine had been definitely established by an accurate inventory and physical count, and, of course, the accused was charged with stealing only six cases. The significance of the discrepancy was that it raised substantial doubt about Rose's ability to recall the facts and his general reliability as a witness as such. The kind of impeachment of testimony that permits the use of prior consistent statements requires something more than a general attack on credibility through cross-examination or the presentation of conflicting evidence. *United States v. Kauth*, 11 U.S.C.M.A. 261, 29 C.M.R. 77 (1960). Thus it is doubtful that even the single line in Rose's statement of 12 September regarding the number of cases actually stolen was admissible under this exception.

Even if we were to assume that Rose's prior consistent declaration that seven rather than nine cases of cigarettes had been stolen was properly admitted as a prior consistent statement, we would nonetheless find error. The remaining portions of the statement were not relevant to any of the areas upon which Rose had been impeached and were thus still inadmissible. *United States v. Mason*, 40 C.M.R. 1010 (A.F.B.R. 1969), pet. denied, 40 C.M.R. 327 (1969). It is urged on behalf of the Government that the holding of this Court in *United States v. Stubbs*, 48 C.M.R. 719 (A.F.C.M.R. 1974) would permit the use of Rose's entire prior consistent statement to bolster his credibility because defense counsel had shown one portion of it to be inconsistent with Rose's testimony at trial. This contention completely misconstrues the import of our holding in *Stubbs*. In *Stubbs* we clearly recognized the general principle that a prosecution witness whose testimony has been assailed cannot be rehabilitated and bolstered merely because he has repeatedly made consistent statements in the past. *United States v. Stubbs*, supra, at page 720. Under the peculiar facts in that case, we did permit use of the pretrial sworn statements of five witnesses, portions of which had first been offered by defense counsel as being inconsistent with their trial testimony. A careful reading of our *Stubbs* decision, however, reveals that we did so only because the totality of the evidence in that case "left a confused impression as to whether, and to what extent, the witnesses were contradicted by the pretrial statements." 48 C.M.R. at page 721. The facts of that case made it necessary for the court members to determine what portions of the previous statements were inconsistent with the trial testimony. The situation in *Stubbs* is completely unlike that in the case sub judice. Here, there was but one sentence in Rose's pretrial statement urged to be inconsistent with his trial testimony. This single sentence could readily be excised and offered separately to the jury. This is the most that should have been permitted by the military judge, and for him to admit the remaining portions was error.

 In our view, the bolstering of Rose's testimony by the improper use of his prior sworn statement was extremely prejudicial

to the defense. Apart from the fact that a break-in of the warehouse had occurred in the manner described by Rose, there was but scant corroboration for his in-court testimony. There was no evidence adduced at trial by the prosecution connecting the accused with the crime, other than the testimony of Rose. If the military jury found Rose to be unworthy of belief, it would have had no alternative but to acquit the accused. As noted previously, Rose's credibility was severely impaired by the forceful cross-examination of trial defense counsel. Additionally, the testimony of witnesses and other evidence adduced tended to show that Rose had an extremely poor reputation for truth and veracity and that he had on many prior occasions told untruths. The accused took the stand and denied under oath that he had committed any of the offenses with which he was charged. Thus, the outcome of the case depended entirely upon whether the military jury believed Rose or the accused. With this state of the evidence, there is a very grave risk that the erroneous admission of Rose's entire pre-trial statement "tipped the balance" against the accused and resulted in his conviction. See *United States v. Johnson* (No. 29,545), 23 U.S.C.M.A. 534, 50 C.M.R. 705, 1 M.J. 152, decided 29 Aug. 1975.

While arguably the erroneous admission of Rose's statement might be taken to affect only the accused's conviction of the housebreaking and larceny charges, we find that, under the circumstances of this case, the findings of guilty of the assault upon Rose and the attempted unlawful entry into his room are similarly improper. The two sets of offenses are so closely related and intertwined, and both are so utterly dependent upon Rose's credibility that the improper bolstering of his credibility concerning the earlier offenses affects his credibility with respect to his assertion that he had been assaulted by the accused for informing on him about the housebreaking. Put another way, if the jury believed Rose about the housebreaking because of his prior sworn statement given to the OSI on the day of the alleged beating, they would tend also to believe his account of the beating itself.

For the reasons stated, the findings of guilty and the sentence are incorrect in law and are set aside. In view of our disapproval of the findings, it is unnecessary for us to rule upon the petition for new trial. Manual for Courts-Martial, 1969 (Rev.), paragraph 109f. In his discretion, the convening authority may dismiss the charges, or he may order a rehearing.

ORSER and SANDERS, Judges, concur.