UNITED STATES

v.

**Airman First Class Ronnie W. SELF, FR 511–64–4944, United States Air Force.**

**ACM 22314.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 23 Aug. 1977.

Decided 27 March 1978.

---

Appellate Counsel for the Accused: Colonel B. Ellis Phillips and Captain Wade B. Morrison. Captain Thomas N. Hawkinson filed a brief on behalf of the accused.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr.

Before EARLY, ORSER and ARROWOOD, Appellate Military Judges.

## DECISION

ORSER, Judge:

Tried by a general court-martial, with members, the accused stands convicted of two specifications alleging the wrongful sale of marihuana and one of wrongfully possessing marihuana with intent to transfer the drug, in violation of Article 134 of the Uniform Code of Military Justice, 10 U.S.C. § 934. The approved sentence provides for a bad conduct discharge, forfeiture of all pay and allowances, confinement at hard labor for three months and reduction to airman basic.

Several errors have been asserted on the accused's behalf by both trial and appellate defense counsel. Some are without merit or were addressed by the staff judge advocate in his review, properly resolved adversely to the accused, and need not be discussed in this decision. The resolution of others is rendered unnecessary in view of our disposition of the case.

The initial matter we address is a challenge to the jurisdiction of the court as to all offenses. Having carefully considered the record in terms of the criteria set forth in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), we find that the court-martial lacked jurisdiction to try the accused for one of the marihuana sale offenses (Specification 1 of the Charge) and for the offense of possession with intent to transfer marihuana (the Additional Charge and its specification). Conversely, we find that the remaining marihuana sale offense (Specification 3 of the Charge) is sufficiently service connected to warrant its inclusion at trial. *United States v. Alef*, 3 M.J. 414 (C.M.A.1977).

The evidence of record shows that the two offenses deemed deficient in service connection factors occurred at the off-base apartment of an Airman Fleming, an acquaintance of the accused, at some date between 15 November 1976 and 1 December of that same year. On that occasion, the accused arrived at the apartment and in-

formed the occupants, most of whom were, like the accused, security policemen assigned for duty at Lowry Air Force Base, Colorado, that he had some marihuana for sale. According to the testimony of an Airman Craft, who testified under a promise of immunity from prosecution, the accused produced a bag of marihuana, divided it into three portions, and sold one portion to Fleming for the sum of $40.00. The accused also offered to sell Craft a bag of the drug and urged him to buy immediately lest it be all sold to others. Craft testified that he declined the offer.

The record further discloses that the two marihuana offenses occurred at a time when the accused was properly absent from his military duties, as, apparently, were all the other military personnel involved. Our scrutiny of the evidence permits no other conclusion than that the sale and all essential underlying negotiations, as well as all facets of the marihuana possession offense, occurred off-base, during off-duty hours, while all parties concerned were blended into the civilian community.

Despite the fact that the parties to the transaction were security policemen, our examination reveals that all twelve of the oft-cited *Relford* factors weigh against military jurisdiction. Accordingly, and particularly on the basis of the principles stated and applied in *United States v. McCarthy*, 2 M.J. 26 (C.M.A.1976), *United States v. Williams*, 2 M.J. 81 (C.M.A.1976), and *United States v. Alef*, supra, the accused was improperly subjected to trial by court-martial for these offenses.

▮ Concerning the remaining marihuana sale offense, the record shows that the accused wrongfully sold a quantity of marihuana to joint purchasers, Airman Craft and an Airman Lawson, for $115.00 on 1 February 1977. Although the marihuana was delivered by the accused to the off-base apartment of Airman Lawson, the record is clear that all essential underlying negotiations, including payment in advance for the drug, occurred on the installation. More specifically, Airman Craft testified that, while he and the accused were both on duty, the accused informed him he could obtain marihuana which he would sell for $40.00 an ounce. The two bargained over the price and the quantity of marihuana to be conveyed. Airman Lawson was contacted, on base, and agreed to combine funds with Craft to purchase marihuana from the accused. Eventually, and while still on base, Craft and Lawson gave the accused a total of $115.00 for a "quarter pound" of marihuana. Subsequently, the accused delivered the marihuana to Craft and Lawson at the latter's off-base apartment.

In terms of the *Relford* criteria we are satisfied that the following factors weigh heavily in favor of the exercise of jurisdiction by the military sovereign:

(1) The on-base status of the essential negotiations;

(2) The military duty status of the parties to the negotiations;

(3) The flouting of military authority implicit in the fact that the negotiations occurred while the parties were supposed to be engaged in law enforcement duties; and

(4) The obvious threat to military personnel and thus the military base implicit in the transaction.

In spite of the off-base situs of the act of transfer, the foregoing circumstances demonstrate the parties were by no means blended into the civilian community during the significant phases of the transaction. There can be no doubt that the military community had the paramount interest in prosecuting this marihuana sale offense. The circumstances demonstrate a distinct military concern that could not be adequately vindicated in the civilian courts. *Schlesinger v. Councilman*, 420 U.S. 738, 760, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *United States v. Lawson*, 4 M.J. 646 (A.F.C. M.R.1977), pet. granted 4 M.J. 339 (C.M. A.1978).

The final error we discuss concerns a claim that an out of court written statement by the principal prosecution witness, Craft which was essentially consistent with his trial testimony implicating the accused in the offenses, was erroneously received in

evidence. Upon careful consideration of the record, we agree.

Craft's uncorroborated testimony was the sole evidence that implicated the accused in the drug offenses of which he was convicted. Further, the record shows that Craft was an accomplice of the accused in the marihuana sale offense as to which we have determined the court-martial properly exercised jurisdiction.

During the direct examination of the witness, the trial counsel solicited Craft's acknowledgement that prior to trial, specifically on 11 May 1977, he was granted immunity from prosecution and a promise of an honorable discharge to testify truthfully against the accused and five other individuals. In response to further questions by the trial counsel, Craft stated that "part of the deal" he had made was that he did not have to testify against an individual named Fleming shown to be implicated with the accused in two of the offenses. Craft said he did not desire to testify against Fleming because they were close friends; however, he had no similar reluctance to testify against the accused with whom he was only acquainted, primarily through military duties. Craft further admitted that he had been immunized from charges involving use and transfer of marihuana and amphetamines and conspiracy to commit murder.

On cross-examination, Craft admitted to certain inconsistencies between his trial testimony and earlier testimony he had given during the Article 32 investigation[1] of the charges against the accused. The witness also admitted he had used drugs extensively since his entry into the Air Force—mostly marihuana—and he saw nothing wrong with smoking marihuana despite the laws against it. In response to further questions by the defense counsel, Craft, in essence, repeated his direct testimony concerning his grant of immunity and the specific offenses to which the immunity applied. In further reference to the grant of immunity, the witness stated that, in addition to Fleming, there were two other individuals he was not required to testify against, although he possessed information implicating all three in drug offenses. He admitted that the three were closer friends of his than the six individuals he had promised to testify against.

At the conclusion of the cross-examination, the trial counsel was permitted to enter in evidence a written statement executed by Craft over two months before trial and some three months after the date of the most recent offenses charged against the accused. The statement is dated 11 May 1977 and, according to Craft's testimony, was prepared before he was granted immunity. The statement is essentially consistent with the witness' testimony implicating the accused in the charged offenses. The military judge admitted the statement in its entirety. He neither explained to the court members the reason for the statement, nor gave them any instructions concerning the purpose for which they could consider it.

■ It is the general rule that an unimpeached witness cannot be corroborated or his testimony bolstered or fortified by evidence indicating he has made pretrial statements consistent with his testimony on the witness stand. *United States v. Kellum*, 1 U.S.C.M.A. 482, 4 C.M.R. 74 (1952); *United States v. Kauth*, 11 U.S.C.M.A. 261, 29 C.M.R. 77 (1960); *United States v. Robertson*, 51 C.M.R. 411, 1 M.J. 709 (A.F.C.M.R. 1975); *United States v. Brunious*, 49 C.M.R. 102 (N.C.M.R.1974); see, generally, 81 Am. Jur.2d, Witnesses, Section 642 et seq.

The rule is expressed in the Manual for Courts-Martial, United States, 1969 (Rev), paragraph 153a as follows:

> In general, a person gains no corroboration merely because he repeats a statement a number of times. Consequently, a witness ordinarily may not be corroborated by showing that he made statements consistent with his testimony.

As was most recently pointed out by this Court in *United States v. Robertson*, supra, the United States Court of Military Appeals in the early case of *United States v. Kel-*

1. Article 32, Code, supra; 10 U.S.C. § 832.

*lum, supra,* observed that there are three generally recognized exceptions to the prohibitory rule. Thus, prior consistent statements are admissible:

(1) where the testimony of the witness is assailed as a recent fabrication;

(2) where the witness has been impeached by prior inconsistent statements; and

(3) where the witness' testimony is discredited by an imputation of prejudice or motive to testify falsely arising after the date of the prior statement.

To the same effect see Manual for Courts-Martial, supra, paragraph 153*a.*

[4] Having carefully scrutinized the record, we conclude that Craft's out of court statement did not qualify under any of the foregoing exceptions to the rule. *United States v. Robertson,* and *United States v. Brunious,* both supra. As appellate defense counsel aptly note, the thrust of the defense counsel's cross-examination was that anything the witness said against his client, whether during trial or before, was fabricated. As in *Robertson,* the theme of counsel's attack was that Craft was generally unreliable because of unsavory personality traits and characteristics he demonstrated quite apart from either his testimony or his earlier statement. For that reason the recent fabrication rule is inapplicable.

The second exception, that permitting the use of a prior consistent statement where the witness has been impeached by a subsequent statement inconsistent with his testimony, is similarly inapplicable. Although, as earlier recited, the defense counsel managed to demonstrate certain inconsistencies between Craft's testimony at trial and his testimony at the Article 32 investigation,[2] it is obvious to us that counsel's effort in that regard was an integral part of his general attack on the witness' worthiness of belief.

The only significance we can see in the discrepancies is that they called in question Craft's ability to accurately recall the facts, and thus challenged his general reliability as a witness. As we noted in the *Robertson* case (at page 414, 1 M.J. at page 713):

> The kind of impeachment of testimony that permits the use of prior consistent statements requires something more than a general attack on credibility through cross-examination or the presentation of conflicting evidence. *United States v. Kauth,* 11 U.S.C.M.A. 261, 29 C.M.R. 77 (1960).

Even if we were to assume for purposes of this discussion that the portion of the earlier consistent statement devoted only to the inconsistencies brought out by the defense counsel were admissible, that assumption would not permit admission of the entire statement. The bulk of the statement was not relevant to any of the matters upon which Craft was impeached and thus remained inadmissible. *United States v. Robertson,* supra; *United States v. Mason,* 40 C.M.R. 1010 (A.F.B.R.1969), pet. denied, 40 C.M.R. 327 (1969).

Left for consideration is the third exception to the rule, the one permitting a prior consistent statement in a situation where the witness' testimony is discredited by an imputation of subsequent prejudice or motive to testify falsely. In proffering Craft's prior statement, the trial counsel obviously had this exception in mind; the government representative indicated that the statement was admissible because the defense counsel in his cross-examination of Craft had imputed to the witness a motive to testify falsely because of the grant of immunity.

While there doubtless may be situations where prior consistent statements would be admissible for the reason urged by trial counsel,[3] the instant case is not among

---

2. The most notable inconsistencies concerned (1) who, besides the accused and the buyer, was present at Lawson's apartment when the accused sold marihuana there, and (2) where he was assigned when he first smoked marihuana.

3. See *United States v. Griffin,* 1 M.J. 784, 787 (A.F.C.M.R.), where this Court observed:

> One important circumstance which strongly affects a witness's worthiness of belief is that he has been granted immunity from trial for his testimony. *United States v. Webster,* 1

them. As seen, the trial counsel himself first broached the subject of the grant of immunity. Although the defense counsel, in turn, quizzed the witness about the grant, his questioning disclosed no more than a few further details concerning the grant. Overall, the cross-examination of Craft produced essentially a rehash of what the witness had said in response to trial counsel's questions. Thus, if the defense counsel's questions concerning the grant could in some liberal manner be construed as imputing to the witness bias, prejudice or a motive to testify falsely, the same construction applies to the earlier questions by the trial counsel. Under the circumstances, the trial counsel's asserted basis for admission of the prior consistent statement was significantly self-induced. We decline to sanction that kind of a "boot-strapping" operation.

Moreover, even if we were to assume, arguendo, that the defense counsel's questions concerning the grant of immunity imputed bias, prejudice, or a motive to testify falsely, in our judgment the statement would still be inadmissible. Although the statement may technically have preceded the grant of immunity by one day or less, the record strongly indicates that Craft's motive for making it was to qualify for immunity. Therefore, the statement had self-serving qualities sufficient to deprive it of any independent probative value to bolster or support the witness' testimony and should not have been considered by the Court. *United States v. Brunious*, and *United States v. Kauth*, both supra.

We conclude, therefore, that the military judge abused his discretion in admitting the statement into evidence. We further find that the error was not waived in this instance by the defense's failure to object to the exhibit. The statement constituted hearsay evidence which did not become competent by virtue of the absence of a defense objection. Manual for Courts-Martial, supra, paragraph 139a ; *United States v. Brunious*, supra; *United States v. Carrier*, 7 U.S.C.M.A. 633, 23 C.M.R. 97 (1957); *United States v. Murray*, 15 U.S.C.M.A. 183, 35 C.M.R. 155 (1964).

In our opinion, the improper bolstering of Craft's testimony by the use of his prior sworn statement was error of prejudicial magnitude. *United States v. Robertson* and *United States v. Brunious*, both supra. As indicated, Craft's testimony implicating the accused in the service connected marihuana sale offense was totally uncorroborated. If the court found Craft unworthy of belief, it would have had no recourse but to acquit the accused. Here, as in *Robertson*, Craft's credibility was severely challenged. He was shown to have committed numerous drug related offenses and had a poor reputation for truth and veracity. Of additional import, in admitting the prior consistent statement in evidence, the military judge provided the court members with no limiting instructions concerning its function. See *United States v. Graves*, 23 U.S.C.M.A. 434, 50 C.M.R. 393, 1 M.J. 50 (1975). Thus, the erroneous admission of the statement was compounded by the fact that the military jury was free to improperly consider the exhibit as substantive evidence of the essential facts at issue, rather than solely for purposes of refutation of impeachment.[4] See *United States v. Kellum*, supra; 81 Am.Jur.2d, supra, Section 644. Although Craft's testimony was largely uncontroverted by the defense, the judgment of the court-martial depended entirely on his worthiness of belief. Under the cir-

M.J. 216 (1975); *United States v. Nelson*, 23 U.S.C.M.A. 258, 49 C.M.R. 433 (1975); see *Giglio v. United States*, 405 U.S. 150, [92 S.Ct. 763, 31 L.Ed.2d 104] . . . (1972); *Alford v. United States*, 282 U.S. 687, [51 S.Ct. 218, 75 L.Ed. 624] . . . (1931).

4. In his findings instructions the military judge did advise the court members that Craft's testimony was uncorroborated as a matter of law. Unfortunately, however, any beneficial effect of the instruction was eradicated by virtue of it being inconsistently and ambiguously conjoined with another instruction advising the members that whether Craft's testimony was corroborated was a question of fact for their determination. See *United States v. Pennington*, 21 U.S.C.M.A. 461, 45 C.M.R. 235 (1972); *United States v. Truman*, 19 U.S.C.M.A. 504, 42 C.M.R. 106 (1970).

cumstances, there is an unacceptable risk that the erroneous admission of Craft's statement resulted in the accused's conviction. See *United States v. Johnson*, 23 U.S. C.M.A. 534, 50 C.M.R. 705, 1 M.J. 294 (1975); *United States v. Robertson*, supra.

For the reasons stated, the findings of guilty are incorrect in law and are set aside. On the basis of our finding of insufficient service connection, Specification 1 of the Charge, and the Additional Charge and specification thereunder are dismissed. A rehearing may be ordered.

EARLY, Chief Judge, and ARROWOOD, Judge, concur.