UNITED STATES, Appellee,

v.

Specialist Four Maurice T. MEYERS,
U.S. Army, Appellant.

CM 441921.
No. 44,642.

U.S. Court of Military Appeals.

Aug. 6, 1984.

For Appellant: *Captain Alan D. Groesbeck* (argued); *Colonel William G. Eckhardt, Major Robert C. Rhodes, Captain Warren G. Foote, Captain Paul J. Moriarty* (on brief); *Colonel R. Rex Brookshire, II,* and *Captain David M. England.*

For Appellee: *Captain Michael S. Child* (argued); *Colonel James Kucera, Lieutenant Colonel John T. Edwards* and *Captain Glenn D. Gillett* (on brief); *Colonel R. R. Boller* and *Captain Mark S. Julius.*

Opinion of the Court

FLETCHER, Judge:

Appellant was tried by general court-martial at Wuerzburg, Federal Republic of

Germany, on September 28, 1981. Contrary to his pleas, he was found guilty of possession, transfer, and sale of marihuana on April 29, 1981. The members of his court-martial sentenced him to confinement at hard labor for 2 years, forfeiture of $250.00 pay per month for 24 months, and reduction to pay grade E–1. The convening authority approved and the Court of Military Review affirmed the findings of guilty and the sentence. 14 M.J. 749 (1982).

This Court granted review on the following issue of law:

WHETHER THE MILITARY JUDGE IMPROPERLY ADMITTED PROSECUTION EXHIBIT 3, AN MP'S INVESTIGATION REPORT, AS A PRIOR CONSISTENT STATEMENT WHEN THE WITNESS HAD MADE NO PRIOR INCONSISTENT STATEMENT.

Examination of the final briefs in this case indicates that appellant now further asserts that the Government failed to show that the prior consistent statement was made before the witness' purported motive for falsification arose. *United States v. Quinto*, 582 F.2d 224, 234 (2d Cir. 1978). *Cf.* Analysis of Mil.R.Evid. 801(d)(1)(B), Appendix 18, Manual for Courts-Martial, United States, 1969 (Revised edition). We hold both these contentions are without merit.

The Court of Military Review made the following findings of fact:

The prosecution's case rested primarily on the testimony of a covert military police investigator, Specialist Four Nurse. Nurse testified that on 29 April 1981, he and a confidential informant were walking along a street in Leighton Barracks when the appellant drove by and called out to the informant. The informant approached the appellant and asked if the appellant "had anything." The informant and Nurse then entered the appellant's automobile and drove to a nearby parking lot where the appellant produced a plastic bag containing seventy-two pieces of hashish. Nurse purchased four pieces for $80.00 and then offered to buy the remainder for a total of $1440.00. Because Nurse did not have

sufficient money with him, he arranged to meet the appellant at an enlisted club later that day. However, the appellant failed to appear at the agreed time.

Specialist Nurse further testified that he encountered the appellant again on 6 May, when the appellant apologized for not showing up on the evening of 29 April, and explained that he did not appear because he feared that Nurse was a military policeman.

On cross-examination the defense questioned Nurse about a written pretrial statement which Nurse had made. It is that statement that the appellant now contends was erroneously admitted. During his cross-examination the individual defense counsel implied that Nurse had no independent recollection of the date on which he and the appellant had first met but was relying on his prior statement, and that Nurse had so many ongoing investigations that he had mixed up the details of this case with others.

The appellant denied any contact with Nurse and the informant on 29 April. He testified that he met Nurse for the first time on 4 May but that no sale of hashish occurred.

The prosecution offered Nurse's prior statement as a prior consistent statement, but the military judge initially declined to admit it. However, after the court closed to deliberate on findings a court member asked to see the statement. The military judge reconsidered his prior ruling and admitted it.

14 M.J. at 750–51.

The record of trial reveals the following concerning government counsel's initial motion to introduce the April 29 statement of Agent Nurse:

MJ: First, with respect to Prosecution Exhibits 3 and 4 for identification, I believe you stated that—your theory of admissibility Captain Cates was a prior consistent statement?

TC: Yes, Your Honor.

MJ: I question whether they're admissible under that theory.

Does the defense have any objections to that?

IDC: I object to it, Your Honor, yes.

MJ: Why don't you just state your grounds for the record?

IDC: Well, first, of all I don't think there is a proper foundation laid to attack—to offer them on that theory. That's the basis.

MJ: Do you wish to be heard further Captain Cates?

TC: Your Honor, the defense counsel in his cross-examination asked questions which would imply that the statements by the witness on the witness stand were not accurate because of the amount of people that he had dealt with in which case I offered the statements as a rebuttal to this attack that they are prior consistent statements, that they were made right after the events in question and that they were accurate at the time that they were written down.

MJ: The way I view the evidence is that Mr. Bellen attempted to impeach the witness and used the fact that the witness did not recall all of the details during an interview with Bellen some time earlier than today and after the written statements were made that the witness used these statements, Prosecution Exhibits 3 and 4 to refresh his recollection at that time. Not that there was anything inconsistent. I don't think that anything inconsistent was brought out Captain Cates. In view of that and also although Mr. Bellen in cross-examination attempted to, alluded to the possibility of recent fabrication due to many cases and poor memory the answers of the witness do not support that line of questioning. Therefore, prior consistent statements are not admissible in rebuttal, so I will not receive these two exhibits 3 and 4 into evidence.

Later when the statement was requested by a court member, the following transpired:

MJ: Counsel for both sides have had an opportunity to see Colonel Conner's question. I'll hear counsel if you desire. First, is there any objection?

IDC: No. The point is that it's not before the court and they just decide on what's before the court.

MJ: All right, that's your position.

TC: Your Honor, if the ruling is the same on the admissibility of the statement then agreed that it is not before the court at this time. I believe some explanation should be given so they will understand why.

IDC: I have no objection to that. Just say—I agree with Captain Cates.

TC: Of course if your ruling has changed from the other evidence of the case then I would again offer them into evidence.

MJ: May I have the statement please?
(TC hands document to MJ. MJ reads document.)

MJ: The evidence presented subsequent to the time that Captain Cates originally attempted to introduce Prosecution Exhibit 3 for identification into evidence, I am of the opinion that based on the testimony of the accused with regard to the dates involved and the accused's denial of having seen Specialist Nurse on the 29th of April, I will allow and will now receive into evidence Prosecution Exhibit 3 for identification as Prosecution Exhibit 3 and I will instruct the court that they may now, they may consider Prosecution Exhibit 3 and that it is a statement made by Specialist Nurse prior to trial and that it is consistent with his testimony at trial, specifically with respect to the date and that I will instruct that if you believe that such a consistent statement was in fact made you may consider it for its tendency to refute the charge or claim by the defense that the accused did not see Nurse on the 29th and that if counsel would like—if the defense rather would like the opportunity to present additional argument to the court I will permit it.

■ The first question we will address in this case is whether a sufficient "impeachment foundation" existed to justify admis-

sion of Nurse's prior consistent statement of April 29, 1981. *See* Note: *Rehabilitation of the Impeached Witness Through Prior Consistent Statements: An Analysis and Critique of California Evidence Code Section 791,* 50 S.Cal.L.Rev. 109, 114–16 (1976). Mil.R.Evid. 801(d)(1)(B)[1] permits the admission of a prior consistent statement of a witness where there is "an express or implied charge against the" witness "of recent fabrication or improper influence or motive." *See generally* 4 *Weinstein's Evidence,* ¶ 801(d)(1)(B)[01] (1979). We agree with the Court of Military Review that the defense's cross-examination of Nurse clearly raised the issues of fabrication and improper motive as contemplated by Mil.R.Evid. 801(d)(1)(B).

 The defense engaged in a three-prong attack on the credibility of the government witness, Nurse. The first aspect of this attack focused on a meeting appellant had with defense counsel one week prior to trial. Defense counsel cross-examined Nurse about his inability at that time to recall the date when the alleged drug transaction with appellant took place. A charge of recent fabrication or contrivance is shown "by negative evidence that the witness did *not* speak of the matter before, at a time when it would have been natural to speak; his silence then is urged as inconsistent with his utterances now." 4 Wigmore, *Evidence* § 1129 (Chadbourn rev. 1972). *See McCormick's Handbook on the Law of Evidence* § 49 n. 93 (E. Cleary 2d ed. 1972); *United States v. Kauth,* 11 U.S.C.M.A. 261, 265–66, 29 C.M.R. 77, 81–82 (1960). Defense counsel here was clearly implying, on the basis of Nurse's earlier silence, that his trial testimony as to the date of the offense was a recent fabrication.

The second prong of appellant's attack on the credibility of Nurse focused on the number of cases this investigator was involved in during the last six months. On cross-examination, Nurse admitted that he was involved with many cases during this period—in particular, twelve in the ten days prior to trial. The clear implication of this line of questioning was that Nurse was so overworked that he confused appellant with someone else and his testimony against appellant should not be considered accurate. *See United States v. Coleman,* 631 F.2d 908, 914 (D.C. Cir. 1980).

Defense counsel also questioned Nurse in a manner which impliedly charged that the latter had an improper interest in presenting testimony against appellant. *See* 3A Wigmore, *Evidence* § 969 (Chadbourn rev. 1970); 4 Wigmore, *supra,* § 1128. He cross-examined Nurse as follows:

Q. Okay. Now, you love your work, is that correct?

A. Yes, sir.

Q. Okay, you do it—you spend a lot of time at it, don't you?

A. Yes, sir.

Q. And in fact you want to get out of the Army and be a policeman, don't you?

A. Yes, sir.

Q. In New York City, right?

A. Yes, sir.

Q. Do you want a recommendation from the United States Army?

A. I don't want a recommendation, but it won't hurt to have one.

Q. All right, thank you.

Nothing further.

The clear implication of this line of questioning was that Nurse's testimony against

---

1. Mil.R.Evid. 801(d)(1), Appendix 18, Manual for Courts-Martial, United States, 1969 (Revised edition) (C. 3):

 (d) *Statements which are not hearsay.* A statement is not hearsay if:

 (1) *Prior statement by witness.* The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with the declarant's testimony, and was

given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition, or (B) consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or (C) one of identification of a person made after perceiving the person.

appellant was colored or distorted by his desire to obtain an Army recommendation for civilian police employment. *See United States v. Sledge*, 6 U.S.C.M.A. 567, 569, 20 C.M.R. 283, 285 (1955).

It is true that the trial judge initially refused to admit Nurse's prior consistent statement because no evidence had been offered at that time that Nurse had made a prior statement inconsistent with his trial testimony. We believe this was an excessively narrow reading of Mil.R.Evid. 801(d)(1)(B). *See United States v. Kellum*, 1 U.S.C.M.A. 482, 485, 4 C.M.R. 74, 77 (1952); *compare* 4 Wigmore, *supra*, § 1126 with §§ 1128 and 1129. It is also true that the military judge subsequently decided to admit this evidence because appellant's testimony contradicted Nurse's testimony. *Cf.* 4 Wigmore, *supra*, § 1127. Regardless of the correctness of these rulings by the trial judge, we hold that a sufficient "impeachment foundation," as indicated above, existed for the admission of Nurse's statement as contemplated in Mil.R.Evid. 801(d)(1)(B).

On appeal before this Court, appellant also asserts that the military judge committed plain error in admitting Nurse's statement of April 29, 1981, because it was not shown that this statement was made prior to the inception of his purported motive to falsify. *See* Analysis of Mil.R.Evid. 801(d)(1)(B), *supra*. It is true that the various courts of appeals have split on the existence of this condition for admissi-

bility under Fed.R.Evid. 801(d)(1)(B). *See United States v. Parodi*, 703 F.2d 768, 784–87 (4th Cir. 1983); *United States v. Hamilton*, 689 F.2d 1262, 1273–74 (6th Cir. 1982), *cert. denied*, 459 U.S. 1117, 103 S.Ct. 753, 74 L.Ed.2d 971 (1983); *United States v. Quinto, supra* at 232–35. Yet, it is not necessary for us to decide this question in the present case. *But see* para. 153*a*, Manual for Courts-Martial, United States, 1969 (Revised edition);[2] *United States v. Kauth, supra* at 267, 29 C.M.R. at 83.

█ We note that this specific objection to the admissibility of Nurse's prior statement was not made at trial and, as a result, the record of trial was not fully developed on this matter. *See* Mil.R.Evid. 103(a)(1); *United States v. Parodi, supra* at 783. In any event, the record does reveal that the April 29 statement was made before Nurse's meeting with appellant's lawyer one week prior to trial. It also was made prior to the numerous cases the investigator engaged in between the alleged offense and time of trial. Admittedly, a theoretical possibility existed that the April 29 statement was made at a time police investigator Nurse entertained his interest in securing a recommendation from the Army for a civilian police position. Nevertheless, such a possibility alone does not dictate that the evidence of this statement be excluded. *United States v. DeLaMotte*, 434 F.2d 289, 293 (2d Cir. 1970), *cert. denied*, 401 U.S. 921, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971);

---

**2.** Paragraph 153*a*, Manual, *supra*, the rule of evidence in effect prior to Mil.R.Evid. 801(d)(1)(B), was more explicit on this question:

In general, a person gains no corroboration merely because he repeats a statement a number of times. Consequently, a witness ordinarily may not be corroborated by showing that he made statements consistent with his testimony. But this is only a general rule, and there are some situations in which consistent statements are admissible to corroborate the witness. If the testimony of a witness has been attacked on the ground that it was due to a certain influence, evidence of his statements or conduct, consistent with his testimony, made or occurring before the creation of that influence, may be introduced for the purpose of corroborating his testimony. For example, if the credibility of a witness has

been attacked on the ground of bias due to a quarrel with the accused, *the fact that before the date of the quarrel* he made an assertion similar to his testimony is admissible for this purpose. Similarly, if his impeachment has been sought on the ground of collusion or corruption, evidence of a consistent *statement made by him prior to the collusion or corruption* is admissible for the same purpose. Also, if the testimony of a witness has been attacked on the ground that he made one or more inconsistent statements or on the ground that it was a fabrication of recent date, *evidence of a consistent statement made by him before there was a motive to misrepresent* is admissible to corroborate his testimony.

(Emphasis added.)

*United States v. Grunewald*, 233 F.2d 556, 566 (2d Cir. 1956), *rev'd on other grounds*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931 (1957); *DiCarlo v. United States*, 6 F.2d 364, 367 (2d Cir. 1925); *see also United States v. Feldman*, 711 F.2d 758, 766 (7th Cir.), *cert. denied*, — U.S. —, 104 S.Ct. 352, 78 L.Ed.2d 317 (1983). Accordingly, we find no plain error in the admission of this evidence on this basis.

The decision of the United States Army Court of Military Review is affirmed.

Judge COOK concurs.

EVERETT, Chief Judge (dissenting):

## I

Until the Military Rules of Evidence took effect, a prior consistent statement of a witness was admissible only for corroboration and then only under several well-defined limitations. *See* para. 153a, Manual for Courts-Martial, United States, 1969 (Revised edition). Moreover, although not required by the Manual, this Court followed the rule, favored by Wigmore and others, that "[m]erely assailing a witness's testimony by cross-examination does not afford an opportunity to corroborate him by proof of previous consistent statements." *United States v. Kellum*, 1 U.S.C.M.A. 482, 486, 4 C.M.R. 74, 78 (1952).

Now Mil.R.Evid. 801(d)(1)(B) authorizes receipt of a prior consistent statement as substantive evidence if "[t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is ... consistent with the declarant's statement and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." Neither the Rule nor the Analysis, however, purports to answer whether cross-examination can itself constitute "an express or implied charge ... of recent fabrication or improper influence or motive" on the part of the witness. Because the majority opinion relies exclusively on the cross-examination of Nurse to justify reception of his prior consistent statement under Mil.R.Evid. 801(d)(1)(B), I assume that "assailing a witness's testimony by cross-examination," 1 U.S.C.M.A. at 486, 4 C.M.R. at 78, now is deemed sufficient under some circumstances to authorize admission in evidence of his prior consistent statement. On this point the majority apparently has overruled *sub silentio United States v. Kellum, supra.*

Since, under the Military Rules of Evidence, a prior consistent statement is received as substantive evidence—rather than merely as corroboration of a witness—I hesitate to liberalize admissibility of prior consistent statements in this way. However, I never was fully convinced of the logical basis of the *Kellum* rule that cross-examination of a witness does not by itself justify allowing an opportunity to corroborate him by proof of his earlier consistent statements. Thus, as long as military judges exercise some caution in construing cross-examination as "an express or implied charge ... of recent fabrication or improper influence or motive," I am willing to go this far with the majority.

## II

A second concern I have is that Mil.R. Evid. 801(d)(1)(B)—unlike its predecessor Manual provision—does not, "[o]n its face, ... require that the consistent statement offered have been made prior to the time the improper influence or motive arose or prior to the alleged recent fabrication." Analysis of Mil.R.Evid. 801(d)(1)(B), Appendix 18, Manual, *supra*. Nonetheless, I believe that Mil.R.Evid. 801(d)(1)(B) has not changed the requirement—previously enunciated by paragraph 153a of the Manual—that the consistent statement must "have been made prior to the time the improper influence or motive arose or prior to the alleged recent fabrication." *See* Analysis, *supra*. Various United States Courts of Appeals have read such a requirement into Fed.R.Evid. 801(d)(1)(B). *See United States v. Sampol*, 636 F.2d 621 (D.C. Cir. 1980); *United States v. Guevara*, 598 F.2d 1094 (7th Cir. 1979); *United States v. Quinto*, 582 F.2d 224 (2d Cir. 1978); *Unit-*

*ed States v. Scholle*, 553 F.2d 1109 (8th Cir.), *cert. denied*, 434 U.S. 940, 98 S.Ct. 432, 54 L.Ed.2d 300 (1977); *but see United States v. Parodi*, 703 F.2d 768, 784–87 (4th Cir. 1983); *United States v. Rubin*, 609 F.2d. 51 (2d Cir. 1979), *aff'd*, 449 U.S. 424, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981). The language of the Military Rule corresponds to this Federal Rule. Although there is a substantial conflict of civilian authority on this point, I prefer the more restrictive interpretation of Mil.R.Evid. 801(d)(1)(B).

The key to answering this dilemma is relevance. *See* Mil.R.Evid. 401. As Judge Weinstein put it in his treatise on the Federal Rules of Evidence:

> Substantive use under Rule 801(d)(1)(B) is limited to situations where high probative value is most likely. Evidence which counteracts a suggestion that the witness changed his story in response to some threat or scheme or bribe by showing that his story was the same prior to the external pressure is highly relevant in shedding light on the witness' credibility. Evidence which merely shows that the witness said the same thing on other occasions when his motive was the same does not have much probative force "for the simple reason that mere repetition does not imply veracity."

4 *Weinstein's Evidence*, 801–117 to 801–18 (1979) (footnotes omitted). *Accord* 4 D. Louisell and C. Mueller, *Federal Evidence* 188 (1980). In my view, this logic is compelling. And if this were not enough, the scale certainly is tipped in this direction by the new, unlimited use to which this evidence can be put. When a prior consistent statement, once admitted, can be used as substantive evidence rather than merely as corroboration of the witness, any marginal relevance of such a statement made after the motive to fabricate arose clearly is outweighed by the risk of undue prejudice to the accused. *See* Mil.R.Evid. 403.

In the present case, the reception in evidence of Nurse's prior statement was erroneous because it violated these limitations on admissibility. Nurse's implied motive to fabricate the commission of crimes by oth-

ers so that he could receive a "recommendation from the United States Army" existed on April 29, when he prepared his statement.

### III

An alternative ground relied on by the Court of Military Review was Mil.R.Evid. 801(d)(1)(C), which concerns identification. The court held:

> We note that the defense also implied, in both cross-examination and argument, that Nurse may have made a drug purchase on 29 April but from someone other than the appellant. Accordingly, Nurse's prior statement also was admissible as a statement of identification under Mil.R.Evid. 801(d)(1)(C).

14 M.J. 749, 751 (A.C.M.R. 1982). Under the circumstances of this case, though, I do not agree that the statement here at issue was admissible for this purpose.

The proffered exhibit contained the statement, "The Black male was later identified as SP4 MEYERS, USAMEDDAC, Wuerzburg." This is not a typical example of the "identification" intended to be included within Mil.R.Evid. 801(d)(1)(C). More classic examples would be "[e]vidence that the ... [declarant] heard the voice of the culprit while the ... [crime] was being committed ... and, upon later hearing the [defendant's] voice, ..., said 'he's the one' "; or evidence that the declarant, who saw the act committed and who personally knew the defendant, said "the one who did it is" the defendant. *See* Louisell and Mueller, *supra* at 208. In the cases illustrated by these examples, the identification statement is relevant as trustworthy: it is based on the personal senses of the declarant.

In the case at bar, however, the record does not indicate *how* appellant "was later identified" to Nurse: Did the informant subsequently identify appellant by name? How? Nurse certainly did not know appellant; appellant was a stranger to Nurse, as is clear from the quoted part of Nurse's statement and from his testimony on cross-

examination. In other words, Nurse's "identification" of appellant by name in his statement is untrustworthy and, hence, not relevant for that purpose. Indeed, considering the numerous constitutional issues involved in using a prior statement for identification, *see id.* at 238 *et seq.*, the use of Nurse's statement for identification under the circumstances of this case may well have violated appellant's constitutional right of confrontation. *See* U.S. Const. amend. VI.

## IV

The military judge originally excluded Nurse's statement from evidence. Contrary to the majority opinion, I am convinced that he should have adhered to his ruling, rather than succumbing to the curiosity of the court members. Of course, in light of the circumstances under which the statement was requested by the court members and considered by them, there can be no doubt that the error in receiving it was prejudicial to appellant.