**UNITED STATES**

v.

**Gene A. WALDRUP, 432 23 6270, Sonar Technician (Surface) Second Class (E–5), U.S. Navy.**

**NMCM 88 3957.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 6 May 1988.

Decided 20 Dec. 1989.

---

Eugene R. Fidell, Esq., Civilian Defense Counsel.

LT Fredric D. Firestone, JAGC, USNR, Appellate Defense Counsel.

LT Robert A. Kemins, JAGC, USNR, Appellate Government Counsel.

LT Richard Chema, JAGC, USN Appellate Government Counsel.

Before ALBERTSON, Senior Judge, and STRICKLAND and RUBENS, JJ.

STRICKLAND, Judge:

At a general court-martial composed of a military judge alone, appellant was found guilty, contrary to his pleas, of wrongful possession of a trace amount of methamphetamine and obstruction of justice by wrongfully endeavoring to influence the testimony of a witness in violation of Articles 112a and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 912a and 934, respectively. Appellant was sentenced to confinement for 3 years, forfeiture of all pay and allowances, reduction to E–1, and a dishonorable discharge. The convening authority approved the adjudged sentence. We have heard oral argument and reviewed the briefs of counsel; of the 6 assigned errors raised by appellant[1] we will discuss I, II, and III.

### Facts

During a routine check-in inspection of appellant's seabag at the Transient Personnel Unit, Naval Station, San Diego, a trace amount of methamphetamine was found in the pocket of a leather jacket. A special court-martial was originally contemplated to adjudicate this alleged offense. Appellant's ex-girlfriend, Denise C., was expected to testify that she had loaned the leather jacket to a third party who had possessed the methamphetamine. However, Denise C. approached the trial counsel prior to the trial and informed him that her previous statements concerning who had possessed the leather jacket prior to the inspection were false. She further stated that appel-

lant had requested she provide the false statements and that she testify falsely at the upcoming court-martial. The original charge of wrongful possession of methamphetamine was then withdrawn and re-referred with an obstruction of justice charge to a general court-martial.

Denise C. testified at trial that she was asked to testify falsely in exchange for appellant's declaration of his paternity of her unborn child. The appellant had not yet acknowledged his paternity nor provided any financial support. Denise C.'s mother, Delores J., testified that it was not until her daughter received the subpoena to testify at the special court-martial that she realized the grave consequences of committing perjury and decided not to testify falsely despite the agreement with the appellant.

The mother's testimony was admitted at trial as a prior consistent statement of Denise C. to counter a charge of improper motive. The defense counsel attempted during cross-examination to portray Denise C. as a bitter, spurned lover who fabricated the entire story to get even with the appellant for ending their relationship. To further impeach Denise C. the defense also attempted to discover from the Government alleged records of psychological treatment given to Denise C. by a civilian doctor. The defense had early in the case made a general request for such discovery, but after talking with the mother, Delores J., the defense filed a specific request to

1.

I

THE MILITARY JUDGE ABUSED HIS DISCRETION AND ERRED TO APPELLANT'S SUBSTANTIAL PREJUDICE WHEN HE FAILED TO ORDER PRODUCTION OF DISCOVERABLE MATERIAL.

II

THE MILITARY JUDGE ERRED IN ADMITTING THE TESTIMONY OF DELORES [J.] AS A PRIOR CONSISTENT STATEMENT PURSUANT TO MIL.R.EVID. 801(d)(1)(B).

III

TRIAL COUNSEL'S CLOSING ARGUMENTS ON THE MERITS AND FOR SENTENCING WERE INFLAMMATORY AND IMPROPER, AND SUBSTANTIALLY PREJUDICED APPELLANT.

IV

APPELLANT'S SENTENCE TO THREE YEARS CONFINEMENT AND A DISHONORABLE DISCHARGE WAS INAPPROPRIATE.

V

IF THIS HONORABLE COURT HOLDS THAT THE PRIOR CONSISTENT STATEMENT EVIDENCE (DISCUSSED IN ASSIGNMENT OF ERROR II) IS INADMISSIBLE, THE GUILTY FINDING TO CHARGE II SHOULD BE SET ASIDE AND REMANDED FOR RETRIAL.

VI

IF THIS HONORABLE COURT SETS ASIDE THE GUILTY FINDING TO CHARGE III, BUT DOES NOT SET ASIDE THE GUILTY FINDING TO CHARGE II, THE COURT SHOULD REASSESS THE SENTENCE AND IMPOSE A SENTENCE NO GREATER THAN THE JURISDICTIONAL MAXIMUM SENTENCE OF A SPECIAL COURT-MARTIAL.

discover any possible civilian mental health records that existed. The Government responded by stating they were unaware of any such records, and that even if such records existed, they were under no duty to provide such records to the defense because the records were not in their possession or control. The trial judge agreed with the Government and denied the request to order discovery of the alleged medical records.

During its case-in-chief, the defense offered the testimony of appellant's fiancee to show that appellant had not been in possession of the leather jacket for quite some time and that the leather jacket was not as important to the appellant as Denise C. had testified. On rebuttal, appellant's ex-fiancee, Tammy P., testified that the leather jacket was appellant's favorite jacket and that he wore the leather jacket whenever he rode his motorcycle. In an attempt to impeach Tammy P. the defense elicited during cross-examination that she no longer cared for the appellant and that she was still angry with him. On redirect the Government established that the reason Tammy P. no longer cared for appellant was because he had broken off their intended marriage without any explanation and that, despite claims to the contrary, the appellant had never helped her with the $3,000 in bills she incurred in planning their wedding.

I

Denial of Discovery Request

It is the practice in military law to provide broad and liberal discovery to an accused. *See United States v. Eshalomi,* 23 M.J. 12, 24 (C.M.A.1986). The President in Rule for Courts–Martial (R.C.M.) 701, Manual for Courts–Martial (MCM), United States, 1984, has promulgated generous provisions which require the Government to provide discovery. R.C.M. 701(a), MCM, 1984, divides discoverable material into two actionable categories: (1) material that must be provided to the defense without any request and (2) material that must be first requested by the defense. There is no dispute that the material requested herein

by the defense counsel was of this latter category.

■ Once the defense has properly requested that discoverable material be provided, the Government is required to "permit the defense to inspect" the material that is in the "possession, custody, or control of military authorities." R.C.M. 701(a)(2), MCM, 1984. When the material is not in the custody or control of the Government then R.C.M. 703(f), MCM, 1984, authorizes the use of subpoenas to obtain the requested material. In both R.C.M. 701(a)(2) and 703(f), MCM, 1984, it is incumbent upon the defense to show that the requested material actually exists. Based on the facts in the record of trial, we agree with the trial judge that the defense did not carry its burden.

The defense requested material consisted of the civilian mental or psychiatric records of the chief government witness, Denise C. The defense alleged that they had become aware of the possible existence of such records when speaking with Denise C.'s mother. The military judge in considering the defense discovery request stated that he was not convinced that the material, even if it existed, was shown to be relevant and that without some indication that the defense was not simply engaged in a blind fishing expedition would not order the requested discovery. The military judge did, however, invite the defense counsel to cross-examine the Government witnesses in order to establish the existence and content of the alleged records.

The testimony elicited at trial fully supports the judge's ruling that the defense failed to show that the requested material actually existed. The pertinent part of the direct examination of Denise C. is set forth:

Q. All right. Did you seek any type of medical help to help you stop using drugs?

A. I consulted my family physician.

Q. Would you describe for the military judge why you made a decision to do that?

A. One night I thought I was going to have a heart attack. I went the next day

to the doctor and explained to him that I had been on drugs. And I told him about how long I had been on drugs. He therefore took several tests.

Q. Now what type of doctor did you go to see?

A. My family doctor. Just a family, you know, a regular family doctor.

Q. Have you ever been to see a psychologist or a psychiatrist?

A. No, I have not.

R. 189.

During cross-examination of Denise C. the defense did not inquire into the type of medical care she had received or whether it included any psychological or psychiatric care. No attempt whatsoever was made to impeach Denise C. with the assertion by her mother that she had been treated by a mental health practitioner. Furthermore, when the mother testified there was again no attempt by the defense to delve into the issue of the existence of any mental health records, even though the mother had been the source for the claim that such records existed. The clear conclusion from the testimony of these two individuals is that no such medical records existed. Accordingly, there is ample support in the record of trial for the judge's denial of the defense discovery request, and therefore we find no merit to this assigned error.

## II

### Admissibility of the Testimony of Delores J.

■ Delores J. was called as a witness by the Government to counter a charge by the defense that Denise C., because of an improper motive, had fabricated her story that the appellant had asked her to commit perjury. The military judge allowed the testimony as a prior consistent statement, over objection, after he found that the cross-examination of Denise C. by the defense sufficiently impugned her testimony so as to satisfy the requirements of Military Rule of Evidence (Mil.R.Evid.) 801(d)(1)(B). The defense counsel did not raise and the military judge did not specifically enter a finding as to whether the

prior consistent statement was made at a time when the alleged improper motive to fabricate did not exist. We hold that even though such a timing requirement is not specifically written into Mil.R.Evid. 801(d)(1)(B), based on both civilian and military case law, it was error to allow the testimony of Delores J. without first determining that the prior consistent statement was made at a time before the motive to fabricate existed.

Chief Judge Everett, in *United States v. Sandoval*, 18 M.J. 55, 63 (C.M.A.1984), noted that Mil.R.Evid. 801(d)(1)(B) does not specifically require a prior consistent statement to precede the existence of the improper motive. However, less than 2 months after writing *Sandoval*, Chief Judge Everett dissented in *United States v. Meyers*, 18 M.J. 347, 352 (C.M.A.1984), and stated that the prior rule of evidence which required a timing prerequisite (para. 153a, MCM, 1969) was not changed by the new rule of evidence, despite the fact that the requirement is no longer explicitly written into the rule. Analysis of Mil.R.Evid. 801(d)(1)(B), p. A22–47, MCM, 1984. The rationale for maintaining the timing requirement is based on relevance. Under the old rule the prior consistent statement was admitted for impeachment purposes only and not as substantive evidence. To allow the statement in as substantive evidence under the new rule, without the timing requirement, would admit marginally relevant evidence into a court-martial and therefore any probative value the evidence may have would be outweighed by the risk of undue prejudice. *Meyers*, at 353. Chief Judge Everett along with other commentators have argued that an irrelevant statement does not become relevant just because it is repeated; there must be some other indicia of relevance such as the timing requirement. *See* 4 *Weinstein's Evidence*, 801–150 to 801–151 (1988). Therefore, the prior consistent statement is only relevant and admissible if it was made before the motive or reason to fabricate existed.

Even though Chief Judge Everett's analysis of Mil.R.Evid. 801(d)(1)(B) was filed in a dissent in *Meyers*, the majority's

holding in that case did not decide the issue of the timing requirement. Instead, the majority explicitly stated that they did not have to decide the timing issue.. *Meyers*, at 351.[2] Therefore, there is no binding precedent which would prevent us from adopting a timing requirement for Mil.R.Evid. 801(d)(1)(B). In fact, our sister court has examined Mil.R.Evid. 801(d)(1)(B) and has adopted the relevance analysis enunciated by Chief Judge Everett in *Meyers*. *United States v. Nelson*, 21 M.J. 711, 713 AFCMR 1985).

The Government has argued that the current trend among federal circuit courts, which have examined whether a similar timing requirement exists for Federal Rule of Evidence 801(d)(1)(B), has been to hold that the timing requirement is merely one of many factors going to admissibility and not a *per se* requirement. *United States v. Miller*, 874 F.2d 1255, 1274 (9th Cir.1989). In our own examination of the cases that have addressed this issue we find that no one consistent rule has emerged and that well-reasoned opinions exist on both sides of this issue. In *United States v. Brennan*, 798 F.2d 581, 587–88 (2nd Cir.1986) and *United States v. Harris*, 761 F.2d 394, 398–400 (7th Cir.1985), the Second and Seventh Circuits held the timing requirement is necessary to ensure a fair trial when the prior consistent statement is offered as substantive evidence but is not required when the evidence is merely offered for the limited purpose of rehabilitating a witness. Since no one trend is discernable from these cases and because we need not decide whether the timing requirement is necessary for a prior consistent statement which is offered not as substantive evidence but for rehabilitation purposes only, we will follow the guidance provided by our senior court. *See United States v. Jones*, 26 M.J. 197, 200 (C.M.A.1988).

■ Our holding that a prior consistent statement is admissible only when it is made before the improper motive to fabri-

cate existed, requires us to decide whether the record of trial contains sufficient facts for us to determine if Delores J.'s testimony was admissible. Since the military judge did not enter factual findings concerning when the alleged improper motive may have existed and because the record of trial is insufficient for us to resolve this factual issue, we decline to engage in speculation as to whether her testimony satisfied the timing requirement. Accordingly, we find that the testimony of Delores J. was improperly admitted and will test for prejudice.

■ The evidence presented at trial was overwhelming as to appellant's guilt of trying to have Denise C. testify falsely in exchange for acknowledgement of his paternity. The mother's testimony was not the last piece of evidence that established appellant's guilt beyond a reasonable doubt but was instead cumulative. Therefore, it is clear to us that the military judge was not influenced or swayed by the inadmissible evidence, and therefore we find it was harmless error. *See Nelson*, at 713.

### III

### Argument of Trial Counsel

Appellant has asserted that the trial counsel's arguments on both the merits and sentencing were overly inflammatory and therefore improper, and that as a result the appellant was substantially prejudiced. In reviewing the arguments of trial counsel and applicable case law, we agree that trial counsel exceeded the bounds of proper argument. Furthermore, based on the ambiguous comments of the military judge, we are not convinced that the improper arguments were harmless and, therefore, will take corrective action.

■ A review of the case law concerning a trial counsel's closing argument reveals a distinct tension between what is considered proper argument and what is considered improper argument. On the

---

2. It should be noted, however, that the majority's opinion seems to agree with Chief Judge Everett's analysis because they mention that the prior consistent statement in question therein

appeared to be made before most of the events that provided the improper motive or influence. *Meyers*, at 351.

one hand, a trial counsel is well within his rights to strike hard blows by forcefully commenting on the evidence presented at trial; however, at the same time the blows must be fair and must not be made with the intent to incite the passions of the fact finder or the sentencing authority. *Compare United States v. White*, 23 M.J. 84 (C.M.A.1986) and *United States v. Williams*, 23 M.J. 525 (ACMR 1986). To determine the propriety of the trial counsel's arguments herein it is necessary to determine if the arguments were supported by the evidence and whether reasonable inferences were drawn, in reference to the issues, facts and circumstances of the case. *United States v. Ruggiero*, 1 M.J. 1089 (NCMR 1977).

■ The trial counsel's theme during his argument on the merits was that, even though the appellant did not testify, the court-martial came down to "whether we believe Petty Officer Waldrup, what he told Petty Officer Wise" who did testify. In this context the trial counsel argued that appellant was "not a responsible, accountable, mature individual who takes accountability for his actions" and that he was deceptive in his relationship with Denise C. in that he "never came forward and was [never] straight with her and honest with her." Furthermore, it was argued that appellant "was not straightforward and honest with [Tammy P.]" and that "he didn't pay the debts he owed her." Accordingly, the military judge was urged to discount the credibility of the appellant, who did not even testify, based on his past relationships.

After hearing the trial counsel's argument the military judge, over objection by the defense counsel, found the argument accurate as to the evidence and "not overly inflammatory." Even though we find trial counsel's argument to be somewhat inflammatory, we agree with the military judge that it was based on accurate inferences drawn from the evidence presented, was not intended to incite the passions of the fact finder, and was not *overly* inflammatory. Therefore, because the evidence of appellant's guilt was so strong, he was not

prejudiced by trial counsel's questionable argument on the merits. However, the same cannot be said of the trial counsel's argument on sentencing.

■ During the sentencing argument, the appellant was portrayed as a "despicable and disgusting" man who took advantage of "one of the most sacred relationships known to human kind ... the relationship between a mother and her young infant." Furthermore, the trial counsel in what only can be described as an attempt to invoke the passions of the military judge pointed out that because the trial was occurring the Friday before Mother's Day the appellant "should be ashamed" for what he did to Denise C. Finally, the military judge was asked to "consider another victim here", the son of Denise C., because that "little boy doesn't have a father, and doesn't have much of an opportunity for any income. Gene Waldrup has refused over and over again to accept the responsibilities that he should have refused (sic) and now we learn that he's impregnated yet another young woman."

This argument by trial counsel went beyond striking hard blows; it was clearly intended to incite the passions of the military judge so that the appellant would be punished for both the offenses he committed and for the manner in which he conducted his private interpersonal relationships. Such an argument is improper. The military judge, even though he declared he "would not consider [the way appellant failed to take responsibility for his child] to be aggravating in and of itself," stated on the record after announcing the sentence that he agreed "wholeheartedly with the comments of trial counsel concerning the despicable nature of [appellant's] conduct in this case."

[9] In a military judge alone case we would normally presume that the military judge would disregard any improper comments by counsel during argument and such comments would have no effect on determining an appropriate sentence. However, in this case, because of the specific statement by the trial judge which adopted the trial counsel's comments, we

are unable to make such a presumption and we are not convinced that the sentence determination was not tainted by these improper remarks. Accordingly, we find the appellant was prejudiced by the improper arguments of trial counsel.

Since the findings of guilty are not tainted by this error, they are affirmed. This error will instead be corrected by reassessing the sentence. *United States v. Sales*, 22 M.J. 305 (C.M.A.1986). Upon reassessment, only so much of the sentence as provides for confinement for 18 months, forfeiture of all pay and allowances, reduction to E–1, and a dishonorable discharge is affirmed.

Senior Judge ALBERTSON and Judge RUBENS concur.