# UNITED STATES AIR FORCE
# COURT OF CRIMINAL APPEALS

————————————

## No. ACM 39956

————————————

## UNITED STATES
*Appellee*

v.

## Austin J. MATHIS
Airman (E-2), U.S. Air Force, *Appellant*

————————————

Appeal from the United States Air Force Trial Judiciary

Decided 11 February 2022

————————————

*Military Judge:* Matthew P. Stoffel.

*Sentence:* Sentence adjudged on 9 July 2020 by GCM convened at Joint Base Pearl Harbor-Hickam, Hawaii. Sentence entered by military judge on 5 August 2020: Bad-conduct discharge, confinement for 8 months, forfeiture of all pay and allowances, and reduction to E-1.

*For Appellant:* Major Jenna M. Arroyo, USAF.

*For Appellee:* Lieutenant Colonel Matthew J. Neil, USAF; Major Brittany M. Speirs, USAF; Mary Ellen Payne, Esquire.

Before KEY, RAMÍREZ, and MEGINLEY, *Appellate Military Judges*.

Judge RAMÍREZ delivered the opinion of the court, in which Senior Judge KEY and Judge MEGINLEY joined.

————————————

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

————————————

RAMÍREZ, Judge:

A military judge sitting as a general court-martial convicted Appellant, in accordance with his pleas and pursuant to a plea agreement, of one charge and

five specifications of wrongful use of controlled substances in violation of Article 112a, Uniform Code of Military Justice (UCMJ) 10 U.S.C. § 912a, one charge and one specification of driving while under the influence of alcohol, in violation of Article 113, UCMJ, 10 U.S.C. § 913, and one charge and one specification of drinking while underage, in violation of Article 134,[1] UCMJ, 10 U.S.C. § 934.[2]

The plea agreement provided that the convening authority would dismiss, with prejudice, Specifications 2, 5, 8, and 9 of Charge I as well as Charge II and its Specification. Additionally, the plea agreement contemplated varying sentencing ranges for each of the seven specifications Appellant pleaded guilty to and that the periods of confinement were to be served concurrently, effectively limiting Appellant's maximum confinement sentence to 15 months. There were no other limitations on the sentence as part of the plea agreement. After accepting the pleas, the military judge sentenced Appellant to a bad-conduct discharge, confinement for eight months,[3] forfeiture of all pay and allowances, and reduction to the grade of E-1.

Appellant raises two issues on appeal.[4] The first is whether trial counsel's sentencing argument was improper. The second is whether Appellant's sentence was inappropriately severe.

We find no material prejudice to a substantial right of Appellant and affirm the findings and sentence.

---

[1] This Charge and Specification was charged as a violation of Hawaii Revised Statute § 281-101.5(b), which was assimilated under the Federal Assimilative Crimes Act, 18 U.S.C. § 13.

[2] As the charged timeframe is from 1 May 2019 to 28 September 2019, references to the Uniform Code of Military Justice (UCMJ) are to the *Manual for Courts-Martial, United States* (2019 ed.).

[3] Specifically, the military judge sentenced Appellant to be confined for two months on Specification 1 of Charge I, to be confined for eight months on Specification 3 of Charge I, to be confined for eight months on Specification 4 of Charge I, to be confined for five months on Specification 6 of Charge I, to be confined for five months on Specification 7 of Charge I, to be confined for five months on the Specification of Charge III, and to be confined for seven days on the Specification of Charge IV. In accordance with the plea agreement, the military judge ordered the terms of confinement to be served concurrently. The plea agreement limited Appellant's total confinement exposure to no more than 15 months.

[4] Appellant raises both issues pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

## I. BACKGROUND

Appellant began his service to the Air Force on 15 January 2019. He arrived to his first duty station, Joint Base Pearl Harbor-Hickam, Hawaii, in May 2019 and was living in the enlisted on-base dorms. Within days of his arrival, he was already engaging in the conduct which led to his court-martial.

Appellant's conduct included using marijuana, lysergic acid diethylamide (LSD) on divers occasions, dimethyltryptamine (DMT),[5] psilocybin mushrooms on divers occasions, and 3,4-methylenedioxymethamphetamine (MDMA). Even more, Appellant smoked marijuana with another Airman and civilians and purchased all the above-mentioned drugs from other Airmen. The Air Force learned of Appellant's drug use after a 12 August 2019 random urinalysis tested positive for MDMA. Finally, on 28 September 2019, Appellant drove his personal vehicle while both drunk and under the legal drinking age—ultimately crashing into another Airman's car which was parked on base.

## II. DISCUSSION

### A. Trial Counsel's Sentencing Argument

Appellant alleges that trial counsel's sentencing argument was improper on three separate occasions and asks this court to set aside his bad-conduct discharge as a result. First, Appellant claims that trial counsel purported to speak for the convening authority. Second, he alleges that trial counsel argued Appellant's preservice drug use and "pledge not to use drugs" as aggravation evidence.[6] Third, he claims that trial counsel argued that Appellant's disregard for the health and safety of his fellow Airmen was aggravation evidence which justified a punitive discharge.

Appellant did not raise any of these specific objections at trial or in clemency and only raises them for the first time on appeal. As discussed below, we find no error which resulted in material prejudice to a substantial right.

#### 1. Additional Background

Appellant entered into a voluminous stipulation of fact with a number of documents attached to it, and the military judge went over the stipulation on the record with Appellant. During this colloquy, the military judge explained how he would use the stipulation of fact:

---

[5] The parties stipulated that DMT is a hallucinogenic drug.

[6] What Appellant describes as a "pledge" is Air Force (AF) Form 2030, *USAF Drug and Alcohol Abuse Certificate* (Aug. 2017), which is more accurately characterized as an acknowledgement—required of all new recruits—that drug abuse is incompatible with military service. The AF Form 2030 was an attachment to the stipulation of fact.

[Military Judge (MJ)]: Are you voluntarily entering into this stipulation because you believe it is in your best interest to do so?

[Appellant]: Yes, Your Honor.

MJ: [Appellant], if I admit this stipulation into evidence it will be used in two ways. First, I will use it to determine if you are guilty of the offenses to which you [pleaded] guilty. Second, I will use it to determine an appropriate sentence for you. Do you understand and agree to these uses of the stipulation?

[Appellant]: Yes, Your Honor.

With no objection from the Defense, the military judge then admitted the stipulation of fact into evidence subject to his acceptance of Appellant's guilty plea.

Through the stipulation and its attachments, Appellant admitted he used marijuana with another Airman and that he borrowed another Airman's car to effectuate his crime; that he bought the psilocybin mushrooms from a fellow Airman, took the mushrooms into the on-base dining facility where he worked and used a food scale to attempt to weigh the drugs; and that he typically used the drugs in his dorm room. As to the LSD, the stipulation of fact included that Appellant normally bought LSD from another Airman; used it in his dorm room and in the dorm room of another Airman; that a friend warned him against such behavior because Appellant was likely to be caught and kicked out of the military; and that Appellant told his friend that he was not worried because, according to Appellant, "Acid is out of your system in like 48 hours. Also I really don't care if I get kicked out." Additionally, Appellant was bold enough to declare that he would be using the LSD in public. The day after telling his friends that he did not care if he was "kicked out" of the Air Force, Appellant sent a text message to his friends stating, "I'm doing Acid tomorrow night and going to the beach. It's going to be cool as f[**]k." As to the drug DMT, the stipulation of fact included that Appellant bought the drugs from another Airman and used them in that Airman's dorm room, and that DMT made him feel as though he was melting into the wall. Appellant also told the military judge that DMT made objects in the room appear to move and colors seemed to change. Finally, as to the drug MDMA, the stipulation of fact explains that Appellant bought the drugs from a fellow Airman and used it in the dorms as well.

In the Defense's sentencing case, Appellant called a single witness, Master Sergeant W, the noncommissioned officer in charge of the dining facility where Appellant worked. Trial defense counsel asked the witness whether she was aware Appellant had disclosed his preservice drug use when he enlisted, and

she responded affirmatively. In his unsworn statement, Appellant talked about this drug use and how he "saw military service as a chance for a better life."

Regarding Appellant's first claim—that trial counsel purported to speak for the convening authority—Appellant highlights the following portion of the sentencing argument, which drew no defense objection:

> And Your Honor, just for a little bit of perspective, absent the cap of confinement set in this case by the convening authority as part of the plea agreement, the maximum sentence would have been 22 years and 7 months of confinement. That's a grand total of 271 months. Now, in recognition of [Appellant's] honesty, his cooperation and of his willingness to come in here and take responsibility for the things he's done, the convening authority already reduced the maximum confinement down to 15 months.

As to Appellant's second claim—that trial counsel argued Appellant's pre-service drug use and pledge not to use drugs as aggravation evidence—trial counsel began her sentencing argument by telling the military judge Appellant had joined the Air Force in January 2019 and, "As part of his enlistment, he filled out some of that typical enlistment paperwork, including acknowledging and admitting that he had experimented with marijuana in the past, but that drug use was incompatible with military service and rendered him ineligible for future service from that day forward." She later argued without a defense objection:

> Among other things, he initialed, acknowledged and agreed to the statement, "[s]ervice in the United States Air Force places me in a position of special trust and responsibility. Drug or alcohol abuse after this date will be considered evidence of my inability to meet the standards of behavior expected of me as a member of the Air Force. Therefore, any drug use or any alcohol abuse . . . from this date forward, renders me ineligible for the Air Force." You heard a little bit from Master Sergeant [W] about how [Appellant] had in fact experimented with marijuana prior to entering the Air Force. But he was ready to have a new life, to change. Your Honor, here's a clean slate. He's got it. He's got every opportunity in the world here to turn things around and have a life without drugs in it. He is ineligible for continued service. [Four] months from the time he signs that very statement -- acknowledging that he will be rendered ineligible by further drug use -- to when he found a plug and started using again. But that's not even -- it's still pretty fresh in knowing those standards, knowing that he'd be rendered ineligible, he started using a litany of drugs.

With regards to Appellant's third claim— that trial counsel argued Appellant's disregard for the health and safety of his fellow Airmen was aggravation evidence which justified a punitive discharge—trial counsel made the following argument, without objection:

> Your Honor, discharge is appropriate in this case for a few reasons.
>
> . . . .
>
> Third, Your Honor should take into consideration [Appellant's] blatant, egregious disregard for the health and safety of his fellow Airmen. [Appellant] brings drugs into the dorms, which is where Airmen live -- the only home they have on this island. The dorms should be a place where Airmen feel safe, secure, able to come home and relax after work. It shouldn't be a place where they're having to wonder if their neighbors are bingeing psychedelics. He describes his drug use in excruciating detail -- talking like he feels like in a trance and like he's melting into the wall. Airmen shouldn't have to worry about coming home from work and finding someone melting into the wall or seeing someone on their balcony "tranced out." They should be able to just come home, get some rests between shifts. Your Honor, even worse, you will see in the stipulation of expected testimony from Airman [JB] -- attached to [the stipulation of fact] -- that [Appellant] took psilocybin mushrooms into the on-base dining facility, where he worked, and used a food scale to weigh the mushrooms -- or at least to attempt to weigh the mushrooms, but for some dead batteries. He took a Schedule I substance and spread it on a food scale meant for the safe preparation of food that's going to be served in a public dining facility. No hesitation about that. No worry about the danger of contamination of food, what might happen to somebody if they accidently ingest a little bit of this mushroom. Airmen should not worry that going to dinner at the [dining facility], they might get a little bit of psilocybin mushrooms in there with their pork chop and baked potato.

### 2. Law

The issue of "[i]mproper argument is a question of law that we review de novo." *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F. 2011) (citation omitted). However, if the defense does not object to a sentencing argument by trial counsel, we review the issue for plain error. *Id.* (citing *United States v. Erickson*, 65 M.J. 221, 223 (C.A.A.F. 2007)). To establish plain error, an appellant "must prove that: (1) there was an error; (2) it was plain or obvious; (3) and the error materially prejudiced a substantial right." *Id.* at 106 (citing *Erickson*, 65

M.J. at 223). "As all three prongs must be satisfied in order to find plain error, the failure to establish any one of the prongs is fatal to a plain error claim." *United States v. Bungert*, 62 M.J. 346, 348 (C.A.A.F. 2006).

"Appellant has the burden of persuading this Court that there was plain error." *United States v. Barraza[ ]Martinez*, 58 M.J. 173, 175 (C.A.A.F. 2003) (citation omitted). "When the issue of plain error involves a judge-alone trial, an appellant faces a particularly high hurdle." *United States v. Robbins*, 52 M.J. 455, 457 (C.A.A.F. 2000). This is because a "military judge is presumed to know the law and apply it correctly, [and] is presumed capable of filtering out inadmissible evidence . . . ." *Id*. (citation omitted). Therefore, "plain error before a military judge sitting alone is rare indeed." *Id*. (quoting *United States v. Raya*, 45 M.J. 251, 253 (C.A.A.F. 1996)). "In a military judge alone case we would normally presume that the military judge would disregard any improper comments by counsel during argument and such comments would have no effect on determining an appropriate sentence." *United States v. Waldrup*, 30 M.J. 1126, 1132 (N.M.C.M.R. 1989).

"Whether an accused has waived an issue is a question of law we review de novo." *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017) (citation omitted). "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *Id*. (citation omitted). As our superior court, the United States Court of Appeals for the Armed Forces (CAAF), has held, "[a] valid waiver leaves no error for [courts] to correct on appeal." *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020). However, the CAAF has made clear that the Courts of Criminal Appeals have discretion, in the exercise of their authority under Article 66, UCMJ, 10 U.S.C. § 866, to determine whether to apply waiver or to pierce that waiver in order to correct a legal error. *See United States v. Hardy*, 77 M.J. 438, 442–43 (C.A.A.F. 2018); *United States v. Chin*, 75 M.J. 220, 222–23 (C.A.A.F. 2016) (discussing our ability to correct error despite waiver).

When a trial counsel makes a sentencing argument, she is allowed "to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence." *United States v Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000) (citations omitted). In addition to argument based on evidence which is already on the record, Rule for Courts-Martial (R.C.M.) 1001(b)(4) allows trial counsel to present evidence as to any aggravating circumstances "directly relating to or resulting from" the offenses of which the appellant has been found guilty.

Additionally, "the argument by a trial counsel must be viewed within the context of the entire court-martial." *Baer*, 53 M.J. at 238. "The focus of our inquiry should not be on words in isolation, but on the argument as viewed in context." *Id*. (internal quotation marks and citations omitted).

While trial counsel may argue for an appropriate sentence, she "may not, in this argument, purport to speak for the convening authority." *United States v. Vos*, 7 M.J. 553, 554 (A.F.C.M.R. 1979). Moreover, trial counsel may not "refer to the views" of the convening authority. R.C.M. 1001(h).

**3. Analysis**

Appellant's first claim of improper argument is that trial counsel purported to speak for the convening authority. Appellant argues that trial counsel "crossed the line into impermissible territory," by arguing that the convening authority had already considered matters in mitigation and extenuation and reduced the maximum confinement possible because of these matters. By doing so, Appellant argues that trial counsel signaled to the military judge that the convening authority believed 15 months was the appropriate sentence. Trial counsel, however, did not say that the convening authority believed 15 months was an appropriate sentence or that the convening authority felt the military judge should sentence Appellant to that amount of confinement. Instead, she argued the convening authority had reduced the maximum amount of confinement Appellant was subject to. This fact, of course, was no mystery to the military judge, because by the time trial counsel made her sentencing argument, the military judge had already gone over—with the Appellant and on the record—each part of the plea agreement that Appellant had with the convening authority. This included a 15-month maximum confinement period and a stipulation that Appellant assisted the Government in other courts-martial, thereby providing matters in mitigation and extenuation.

Appellant focuses on trial counsel's argument that "the convening authority already reduced the maximum confinement down to 15 months." However, we find that trial counsel was not purporting to speak for the convening authority on this point, but instead was simply referring to the limit on confinement imposed by the plea agreement—an agreement which had been signed by Appellant and the convening authority, and which the military judge was already well aware of. While trial counsel is prohibited from referring to the convening authority's views on an appropriate sentence, and trial counsel in this case skirted—perhaps unneccessarily so—the limits of appropriate argument by suggesting the convening authority's reasons for entering into the plea agreement, there was no objection at trial. On balance, we conclude trial counsel's comments did not amount to plain or obvious error. Even if we had found plain error with respect to trial counsel's comment, we would conclude Appellant was not prejudiced in this military judge-alone sentencing proceeding.

Appellant's second claim of improper argument is that trial counsel argued Appellant's preservice drug use and pledge not to use drugs as aggravation evidence. However, this is evidence which was already before the military judge and as an attachment to the stipulation of fact.

As noted above, Appellant entered into a stipulation of fact which included several attachments, one of which was the Air Force (AF) Form 2030, *USAF Drug and Alcohol Abuse Certificate* (Aug. 2017), which formed the basis for the portion of trial counsel's sentencing argument at issue. The military judge went over that stipulation and attachments on the record with Appellant, and Appellant affirmatively agreed to enter into the stipulation with the attachments and agreed for the military judge to use the exhibit to determine if Appellant was guilty and also to determine an appropriate sentence. Therefore, we find that Appellant intentionally relinquished a known right and waived any objection to the form being admitted as evidence. Although we have authority to pierce Appellant's waiver, we decline to do so here because we find there is no legal error to correct on this point.

The fact Appellant waived his objection to the admission of the AF Form 2030 at trial is likely why his argument on appeal focuses instead on trial counsel's references to the form in her sentencing argument. Appellant argues that it is improper evidence in aggravation under R.C.M. 1001(b)(4), under the theory that the evidence was not "directly related to or resulting from" his offenses, and he relies on *United States v. Hardison*, 64 M.J. 279 (C.A.A.F. 2007), for this proposition. Appellant also relies on *Hardison* for his claim that trial counsel's sentencing argument that Appellant knew he was violating an Air Force policy was improper.

*Hardison* is a case which dealt with an individual who joined the Navy pursuant to a drug waiver, permitting her to enlist despite admission of preservice drug use. Approximately three years later, she was administered a random urinalysis which returned positive results for marijuana. She was then charged with and convicted of a single use of marijuana. *See United States v. Hardison*, NMCCA 200200753, 2005 CCA LEXIS 258, at *6 (N.M. Ct. Crim. App. 29 Aug. 2005) (unpub. op.). Trial counsel in that case pointed to enlistment documents in sentencing argument—admitted without objection—in which Hardison had both admitted to past drug use and had pledged not to use drugs. *Hardison*, 64 M.J. at 280 n.1. Also without objection, trial counsel told the members that Hardison "knew better. She came in on a drug waiver. She knew the Navy's drug policy and she violated it anyway." *Id.* at 280. The CAAF concluded the admission of evidence of the appellant's preservice drug use and her understanding of the Navy's "zero tolerance drug policy" in sentencing amounted to clear and obvious error and set aside her sentence as a result. *Id.* at 283–84. In so concluding, the CAAF found the Government had failed to establish the appellant engaged in a continuing course of conduct, because there was no indication her single in-service use of marijuana was not an isolated event or had any connection to her preservice drug use. *Id.* at 282. Thus, the CAAF concluded there was no indication the charged drug use was directly related to her preservice use, specifically noting the preservice use occurred

9

more than three years before the charged use. *Id.* at 282–83. The court also rejected the notion that the pledge not to use drugs was somehow aggravating, primarily because every recruit signs the same document. *Id.* at 283. The opinion, however, largely focuses on the admission of the evidence and does not separately analyze trial counsel's comments during the sentencing argument.

Unlike *Hardison*, Appellant did not merely fail to object to the enlistment document. Instead, he affirmatively agreed to its admission as an attachment to the stipulation of fact he entered into with the Government. Thus, as explained above, Appellant waived any error related to the admission of the form. The question, rather, is whether trial counsel plainly erred by making the argument about the document that she did. We conclude, based on the facts presented here, she did not.

First, Appellant's charged offenses included multiple uses of a variety of drugs beginning just four months after his enlistment, as opposed to the single use of marijuana three years after the preservice use in *Hardison*. Thus, the relationship between Appellant's charged offenses and his preservice use is far more direct. Second, Appellant affirmatively agreed to the admission of the documentary evidence of Appellant's preservice use and his acknowledgement of the Air Force's drug abuse policy, and trial counsel is permitted to argue evidence in the record, as well the reasonable inferences fairly derived from such evidence. Third, separate and apart from the documentary evidence, Appellant elicited testimony from his sole witness about his preservice use and then raised the matter in his unsworn statement. Given this particular backdrop, we conclude trial counsel's argument did not amount to plain or obvious error.

This is a close call in light of the CAAF's conclusion in *Hardison* that recruitment documents pertaining to drug policy are generally not admissible as evidence in aggravation, and we encourage trial counsel not to push the limits on this front. If evidence that an accused signed an acknowledgement regarding a service drug-abuse policy is inadmissible as evidence in aggravation, the corollary would seem to be that it is inadmissible to argue that such evidence amounts to an aggravating factor warranting a higher sentence.

Even if trial counsel's argument in this case did amount to plain error, we would not grant Appellant relief because, unlike *Hardison*, this was a judge-alone trial, and we are confident in the military judge's ability to place the evidence and trial counsel's argument in their proper context.

In Appellant's final claim of improper argument, he contends that trial counsel's argument concerning Appellant's disregard for the health and safety of his fellow Airmen was improper aggravation evidence. Specifically, Appellant argues that trial counsel "compounded her error by bringing in further improper aggravation evidence." It is clear, however, that trial counsel did not

"bring in" this evidence as aggravation evidence in the presentencing phase of the court-martial. Similar to each issue above, this evidence was already admitted—with Appellant's express agreement—subject to the acceptance of Appellant's guilty plea. Trial counsel's argument stemmed from that evidence and included reasonable inferences fairly derived from such evidence. The evidence regarding Appellant using drugs in the dorms, the hallucinogenic effects of his drug use, and using a food scale at the dining facility in his attempt to weigh his drugs were all properly before the military judge and ripe for trial counsel argument. One could question how compelling trial counsel's argument was based on the thin support for concluding Appellant had in fact endangered his fellow Airmen, but an uncompelling argument does not equate to an impermissible one. There was no error. As there was no error, we do not test for prejudice.

## B. Sentence Appropriateness

Appellant argues that his sentence was inappropriately severe because: (1) he offered substantial assistance in the potential prosecution of three Airmen and one civilian drug dealer, and (2) because of his continued exceptional work ethic. We disagree.

### 1. Law

We review sentence appropriateness de novo. *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006). We may affirm only as much of the sentence as we find correct in law and fact and determine should be approved on the basis of the entire record. Article 66(d), UCMJ, 10 U.S.C. § 866(d). "We assess sentence appropriateness by considering the particular appellant, the nature and seriousness of the offenses, the appellant's record of service, and all matters contained in the record of trial." *United States v. Fields*, 74 M.J. 619, 625 (A.F. Ct. Crim. App. 2015) (quoting *United States v. Bare*, 63 M.J. 707, 714 (A.F. Ct. Crim. App. 2006)). While we have significant "discretion in determining whether a particular sentence is appropriate, we are not authorized to engage in exercises of clemency." *Id.* (citations omitted).

"Absent evidence to the contrary, [an] accused's own sentence proposal is a reasonable indication of its probable fairness to him." *United States v. Cron*, 73 M.J. 718, 736 n.9 (A.F. Ct. Crim. App. 2014) (quoting *United States v. Hendon*, 6 M.J. 171, 175 (C.M.A. 1979)). Thus, when considering the appropriateness of a sentence, courts may consider that a pretrial agreement or plea agreement—to which an appellant agreed—placed limits on the sentence that could be imposed. *See Fields*, 74 M.J. at 625–26. However, a sentence within the range of a pretrial agreement or a plea agreement may still be inappropriately severe. *See id.* at 626.

**2. Analysis**

Here, each issue Appellant presents was before the military judge as he considered the appropriate sentence. Additionally, Appellant received less than the maximum sentence contemplated by his plea agreement. Moreover, by entering into this plea agreement, Appellant significantly reduced his confinement exposure compared to the authorized maximum confinement for the crimes of which he was convicted. While such an agreement alone does not establish the appropriateness of a sentence, we have considered that the sentence imposed in this case was within a range agreed upon by Appellant. *See Fields*, 74 M.J. at 625–26.

We have considered that Appellant pleaded guilty, that he expressed remorse, that he offered substantial assistance in the potential prosecution of three Airmen and one civilian drug dealer, and that he performed well for his unit while the charges were pending. It is clear to us that the military judge also took all of this into account. Trial counsel asked the military judge to sentence Appellant to a dishonorable discharge. The military judge did not. Trial counsel asked for 15 months of confinement, the maximum allowed in the terms of the plea agreement. Trial defense counsel argued that eight months was appropriate and the military judge apparently agreed with trial defense counsel and sentenced Appellant to exactly that.

We have also considered the nature and seriousness of the offenses, Appellant's record of service, and all matters contained in the record of trial. We have weighed that against the amount of drug use involved in this case, the relatively short amount of time of the charged offenses, the fact that Appellant was involved with drugs with other Airmen, that he was using the drugs on base and in the dorms, and that he was drinking while underage and driving. Upon weighing each of these against each other, we conclude Appellant's sentence was not inappropriately severe.

## III. CONCLUSION

The findings and sentence as entered are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(d), UCMJ, 10 U.S.C. §§ 859(a), 866(d). Accordingly, the findings and the sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court